UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| VERTEX ENERGY, INC., *et al.*, [1] | Case No. 24-90507 (CML) |
| Debtor(s). | (Jointly Administered) |

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (II) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE DEBTORS' PROPOSED JOINT CHAPTER 11 PLAN, (III) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN DATES WITH <u>RESPECT THERETO, AND (V) GRANTING RELATED RELIEF</u>**

TO THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE:

Kevin M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), by and through the undersigned counsel, files this *Objection to Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures With Respect to Confirmation of the Debtors' Proposed Joint Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, And (V) Granting Related Relief* (the "Solicitation Motion") [ECF No. 141], and represents as follows:

**SUMMARY**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.veritaglobal.net/vertex. The location of Debtor Vertex Energy, Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 1331 Gemini Street Suite 250, Houston, Texas 77058.

1. The U.S. Trustee objects to the Solicitation Motion. The Court should not approve the disclosure statement because the plan is not confirmable as a matter of law for the following reasons:

   i. To the extent that applicable law authorizes exculpation beyond 11 U.S.C. § 1125(e), the Plan's exculpation provision exceeds the scope allowed by Fifth Circuit precedent.

   ii. The attempts to predetermine the applicability and protections under 11 U.S.C. § 1125(e).

   iii. The Plan has both a gatekeeping injunction and an enforcement injunction, and the enforcement injunction improperly enforces exculpations and releases.

   iv. The Plan's exculpation and release provisions for professionals are impermissible under Fifth Circuit authority and professional ethical obligations.

   v. To the extent the Debtors liquidate under the Plan, a discharge under section 1141(d) is inappropriate.

   vi. The Plan improperly limits police and regulatory powers of governmental agencies.

## II. Jurisdiction, Venue & Constitutional Authority to Enter a Final Order

2. The Court has jurisdiction to consider this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this district under 28 U.S.C. § 1408.

3. This Court has constitutional authority to enter a final order in this matter. If it is determined that the bankruptcy judge does not have the constitutional authority to enter a final order or judgment in this matter, the U.S. Trustee consents to the entry of a final order or judgment by this Court in this matter.

4. Kevin M. Epstein is the duly appointed U.S. Trustee for Region 7. The U.S. Trustee has standing to raise, appear and be heard on any issue in a case or proceeding under the Bankruptcy Code. 11 U.S.C. § 307.

5. The U.S. Trustee has a statutory duty to monitor the administration of cases commenced under the Bankruptcy Code. 28 U.S.C. § 586(a)(3). In chapter 11, the U.S. Trustee's supervisory responsibilities include monitoring plans and disclosure statements and filing comments with the court. 28 U.S.C. § 586(a)(3)(B).

**Factual Background**

6. On September 25, 2024, the Debtors filed their *Joint Chapter 11 Plan of Vertex Energy, Inc. and Its Debtor Affiliates* (the "Plan"). [ECF No. 21].

7. On September 25, 2024, the Debtors filed their *Disclosure Statement for the Joint Chapter 11 Plan of Vertex Energy, Inc. and Its Debtor Affiliates* (the "Disclosure Statement"). [ECF No. 22].

8. On October 4, 2024, the Debtors filed their Solicitation Motion seeking in part (i) approval of the Disclosure Statement, (ii) authority to solicit votes with procedure for such solicitation, and (iii) approval of the forms of ballots to be used.

**Exculpations**

9. The Plan contains an Exculpation provision, which provides as follows:

Notwithstanding anything contained in this Plan to the contrary, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or Third-Party Release, effective as of the Effective Date, no Exculpated Party shall have or incur liability or obligation for, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim arising from the Petition Date through the Effective Date related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA[2] and related prepetition transactions, the

---

[2] On the Petition Date, but before the commencement of these chapter 11 cases, the Debtors and the Consenting Term Loan Lenders entered into a restructuring support agreement (the "Restructuring Support Agreement"). The

Postpetition Financing Facilities, the Postpetition Financing Documents, the Disclosure Statement, the Plan (including, for avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the RSA, the Disclosure Statement, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Solely with respect to the exculpation provisions, notwithstanding anything to the contrary herein the Plan, each of the 1125(e) Exculpation Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan. No Entity or Person may commence or pursue a Claim or Cause of Action of any kind against any of the Exculpated Parties or 1125(e) Exculpation Parties that arose or arises from, in whole or in part, a Claim or Cause of Action subject to the terms of this paragraph, without this Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim for actual fraud, gross negligence, or willful misconduct against any such Exculpated Party or 1125(e) Exculpation Party and

---

material terms of the Restructuring Support Agreement, as embodied in the Joint Chapter 11 Plan of Vertex Energy, Inc. and its Debtor Affiliates [Docket No. 21] (the "Plan"), provides for the potential implementation of (a) a standalone recapitalization of the Company's balance sheet (the "Recapitalization Transaction"); or (b) a sale of all, substantially all, or any portion of the Debtors' assets through one or more sales, including through a potential credit bid submitted by the DIP Lenders and/or the Term Loan Lenders (the "Asset Sale"). *See* Solicitation Motion, ECF No. 141, Para. 1.

such party is not exculpated pursuant to this provision; and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Exculpated Party or 1125(e) Exculpation Party. The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

Plan, Art. IX.E

10. Article I.A.1 of the Plan defines "1125(e) Exculpation Parties" as follows:

"*1125(e) Exculpation Parties"* means, collectively, and in each case in its capacity as such: (a) each of the Exculpated Parties; (b) the directors and officers of any of the Debtors; (c) each of the Post-Effective Date Debtors; (d) the DIP Agent and DIP Lenders; (e) the Intermediation Counterparty; and (f) with respect to the foregoing parties, the Related Parties thereof.

Plan, Art. I.A.1

11. Article I.A.83 of the Plan defines "Exculpated Parties" as follows:

"*Exculpated Partie*s" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the independent directors or managers of any Debtor; and (c) any statutory committee appointed in the Chapter 11 Cases and each of their respective members, solely in their respective capacities as such.

Plan, Art. I.A.83

12. Article I.A.146 of the Plan defines "Related Parties" as follows:

"*Related Party*" means each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such person's or Entity's respective heirs, executors, estates, and nominees.

Plan, Art. I.A.146

13. Article IX.E of the Plan contains a gatekeeping provision related to exculpations that requires any Entity or Person wishing to commence a Claim or Cause of Action against any

5

of the Exculpated Parties or 1125(e) Exculpated Parties to obtain a determination from the Bankruptcy Court that such Entity or Person has a colorable Claim or Cause of Action against any of the Exculpated Parties or 1125(e) Exculpated Parties, and specifically authorizing such Claim or Cause of Action. Plan, Art. IX.E.

### **Releases**

14. Article I.A.147 of the Plan defines "Released Parties" as follows, and provides that it only includes parties that "opt in to the Third Party Release":

> "*Released Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Wind-Down Debtors; (d) the Plan Administrator; (e) the DIP Agent and each DIP Lender; (f) the Agent; (g) the Consenting Stakeholders; (h) the Intermediation Counterparty; (i) all Holders of Claims; (j) all Holders of Equity Interests; (k) each current and former Affiliate of each Entity in clause (a) through the following clause (l); and (l) each Related Party of each Entity in clause (a) through this clause (l); *provided*, *however*, that in each case, an Entity shall not be a Released Party if it: (x) elects to not opt in to the Third-Party Release; or (y) timely objects to the Third-Party Release and such objection is not withdrawn before Confirmation.

Plan, Art. I.A.147.

15. Article I.A.148 of the Plan defines "Releasing Parties" as follows:

> "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Wind-Down Debtors; (d) the Plan Administrator; (e) the DIP Agent and each DIP Lender; (f) the Agent; (g) the Consenting Stakeholders; (h) the Intermediation Counterparty; (i) all Holders of Claims; (j) all Holders of Equity Interests; (k) each current and former Affiliate of each Entity in clause (a) through the following clause (l); and (l) each Related Party of each Entity in clause (a) through this clause (l) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan; *provided*, *however*, that in each case, an Entity shall not be a Releasing Party if it: (x) elects to not opt in to the Third-Party Release contained in the Plan; or (y) timely objects to the Third-Party Release and such objection is not withdrawn before Confirmation.

Plan, Art. I.A.148.

16.     Article IV.D of the Plan contains a third-party release provision that imposes on Releasing Parties mutual releases with the Released Parties. Plan, Art. IX.D.

**<u>Injunction</u>**

17.     Article IX.F of the Plan contains an injunction related to releases and exculpations that provides that liabilities released or exculpated in the Plan shall be permanently enjoined upon confirmation of the Plan. Plan, Art. IX.F.

18.     In addition to the injunction linked to the gatekeeping provision, the Plan has a second injunction that provides as follows:

> Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim, Interest, or Causes of Action or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Debtors and any property dealt with by the Plan until the closing of these Chapter 11 Cases.
>
> No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Post-Effective Date Debtors, the 1125(e) Exculpation

Parties, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article IX.C, Article IX.D, and Article IX.E hereof, without the Bankruptcy Court (1) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (2) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, 1125(e) Exculpation Party, Exculpated Party, or Released Party, as applicable. The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

Plan, Art. IX.F

## **OBJECTIONS**

### **Statutory Standards**

19.    Pursuant to Section 1125(b) of the Bankruptcy Code, the proponent of a plan may not solicit its acceptance unless there is transmitted to creditors "the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing by the court as containing adequate information." 11 U.S.C. § 1125(b).  Implicitly, such adequate information includes a representation that the proposed plan is one that can be confirmed.

20.    Section 1125(a) of the Bankruptcy Code defines "adequate information" as "information of a kind and in sufficient detail to enable such hypothetical, reasonable investor to make an informed judgment about the plan. The Court has discretion to determine whether, on a case-by-case basis, a disclosure statement contains "adequate information." *See Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.*), 150 F.3d 503, 518 (5th Cir. 1998). In evaluating whether a disclosure statement contains adequate information, a court "shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information . . . ." 11 U.S.C. § 1125(a)(1); *See also In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir.1988) (stating that "[t]he determination of what is adequate information is subjective and made on a case-by-case basis. This determination

8

is largely within the discretion of the bankruptcy court"). The standard applied by the Fifth Circuit in *Texas Extrusion* was whether the information contained in the disclosure statement "was adequate to enable a reasonable creditor to make an informed decision about the Plan." *In re Texas Extrusion Corp.*, 844 F.2d at 1157.

21. Also, if the plan is patently unconfirmable on its face, the motion to approve the disclosure statement must be denied. *In re Beyond.com Corp.,* 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003) (collecting cases); *In re American Capital Equipment, LLC*, 688 F.3d 145, 154 (3d Cir. 2012) ("[a] bankruptcy court may address the issue of plan confirmation where it is obvious at the disclosure statement stage that a later confirmation hearing would be futile because the plan described by the disclosure statement is patently unconfirmable.").

22. Section 1129(a) of the Bankruptcy Code sets forth the requirements for confirming a chapter 11 plan, when each impaired class of claims votes to approve the plan. Among other things, a plan must comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1).

23. The Debtors bear the burden of establishing that the Plan complies with all elements of section 1129. *In re Cypresswood Land Partners, I,* 409 B.R. 396, 422 (Bankr. S.D. Tex. 2009) ("The Debtor, as the proponent of the [plan], has the burden of proving that all elements of 11 U.S.C. § 1129(a) are satisfied.").

24. Consistent with the requirements set forth in section 1129(a), the U.S. Trustee objects to approval of the Disclosure Statement and to confirmation of the Plan as set forth below.

### Objection No. 1 – The Exculpation Provision is Too Broad in Violation of Fifth Circuit Authority.

25. To the extent that applicable law authorizes exculpation beyond 11 U.S.C. § 1125(e), the Plan improperly provides overly broad exculpation coverage to the independent

9

directors or managers of any Debtor in violation of Fifth Circuit case law. *NexPoint Advisors, L.P. v. Highland Capital Management L.P. (In re Highland Capital Management, L.P.),* 48 F.4th 419, 437-38 (5th Cir. 2022). This controlling decision is unequivocal. Fifth Circuit precedent, including *Bank of New York Trust Company, NA v. Official Unsecured Creditors' Committee (In re Pacific Lumber Co.)* 584 F.3d 229 (5th Cir. 2009), and section 524(e) of the Bankruptcy Code, "require any exculpation in a Chapter 11 reorganization plan be limited to the debtor, the creditors' committee and its members for conduct within the scope of their duties, 11 U.S.C. § 1103(c), and the trustees within the scope of their duties." *In re Highland Cap. Mgmt., L.P.,* 48 F.4th at 437).

26. Specifically, the Fifth Circuit in *Highland Capital* analyzed whether the independent directors who were specifically appointed by the Official Committee of Unsecured Creditors in the Highland Capital bankruptcy case pursuant to an order entered by the bankruptcy court to act together as the bankruptcy trustee could be exculpated and concluded:

> That leaves one remaining question: whether the bankruptcy court can exculpate the Independent Directors under *Pacific Lumber*. We answer in the affirmative. As the bankruptcy court's governance order clarified, nontraditional as it may be, the Independent Directors were appointed to act together as the bankruptcy trustee for Highland Capital. Like a debtor-in-possession, the Independent Directors are entitled to all the rights and powers of a trustee. *See* 11 U.S.C. § 1107(a); 7 COLLIER ON BANKRUPTCY ¶ 1101.01. It follows that the Independent Directors are entitled to the limited qualified immunity for any actions short of gross negligence. *See In re Hilal,* 534 F.3d at 501. Under this unique governance structure, the bankruptcy court legally exculpated the Independent Directors.

*In re Highland Cap. Mgmt., L.P.,* 48 F.4th at 437.

27. Unlike the "Independent Directors" at issue in *Highland Capital*, there is nothing unique about the appointment of the independent directors or managers in these Chapter 11 Cases. More specifically, during the pendency of these Chapter 11 Cases, the bankruptcy court has not issued any order allowing the independent director or managers to act as a bankruptcy trustee for the Debtors. Thus, to be consistent with *Pacific Lumber* and *Highland Capital*, the definition of

"Exculpated Parties" in the Plan must exclude the independent directors or managers of any Debtor.

**Objection No. 2 – The Definition of "1125(e) Exculpated Parties" is Overly Broad.**

28.     The definition of "1125(e) Exculpated Parties" under the Plan includes: (a) each of the Exculpated Parties; (b) the directors and officers of any of the Debtors; (c) each of the Post-Effective Date Debtors; (d) the DIP Agent and DIP Lenders; (e) the Intermediation Counterparty; and (f) with respect to the foregoing parties, the Related Parties thereof. Plan, Art. I.A.1. This definition is overly broad considering the scope of protected activities under 11 U.S.C. § 1125(e).

29.     Section 1125(e) of the Bankruptcy Code provides as follows:

> A person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that participates, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan, of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities.

11 U.S.C. § 1125(e).

30.     First, the inclusion of "Related Parties," given all the persons identified in the definition, is unwarranted because the Debtors have not demonstrated that the "Related Parties" actually participated in good faith in the solicitation of the plan, or the offer, issuance, sale or purchase of securities offered or sold under the plan. Thus, to comply with section 1125(e) of the Bankruptcy Code, the definition of "1125(e) Exculpated Parties" in the Plan must exclude "Related Parties."

31.     Second, the Plan contemplates one of two paths for confirmation: (i) a Restructuring Transaction (Asset Sale); or (ii) a Recapitalization Transaction. *Plan, Art. IV.B and*

11

*G.* To the extent the Debtors conduct an Asset Sale, the Post-Effective Date Debtors, the DIP Agent and DIP Lenders, and the Intermediation Counterparty must be excluded from the definition of "1125(e) Exculpated Parties" because the issuance of securities contemplated under the Recapitalization Transaction will not take place.

**Objection No. 3 - The Plan Attempts to Predetermine the Applicability and Protections under Section 1125(e) of the Bankruptcy Code.**

32. The U.S. Trustee objects to provisions in the Plan that attempt to predetermine that "Exculpated Parties" and "1125(e) Exculpated Parties" participated in good faith and in compliance with applicable laws in relation to solicitation and distribution of the Plan without making an evidentiary showing of the alleged participation.

33. The Exculpation provision includes a carve-out for actual fraud, willful misconduct, or gross negligence, but it qualifies such carve-out with following statement: "…but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan." *See* Plan, Art. IV.E. Moreover, the Exculpation provision further provides, in relevant part, as follows:

> "…
>
> The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.
>
> ..."
>
> Plan, Art. IX E.

34. Similarly, Article XIII.L of the Plan provides as follows:

> "Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, <u>the 1125(e) Exculpation Parties</u>, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Post-Effective Date Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan." (Emphasis added).

Plan, Art. XIII.L

35. These Plan provisions attempt to predetermine the applicability and protections provided by the so called "safe harbor" provision of section 1125(e), which provides a limited exculpation from liability for the "person that solicits acceptance or rejection of a plan[.]" 11 U.S.C. § 1125(e). The Bankruptcy Code specifically conditions that protection on a finding that the person acted "in good faith and in compliance with the applicable provisions of this title . . ." *Id*. Those are not findings that can be "deemed" automatically to exist as a byproduct of inclusion in the plan. A determination of a person's conduct for purposes of section 1125(e) must be demonstrated through a presentation of evidence when the conduct is challenged. *Cf. In re Midway Gold US, Inc.*, 575 B.R. 475, 512 n.140 (Bankr. D. Colo. 2017) (striking part of exculpation provision allowing "reliance on advice of counsel" on the basis that it would be "inappropriate to prospectively apply this defense to shield the Exculpated Parties from liability in all circumstances where it relied on counsel, before any adjudication on the merits of such a defense by a Court of competent jurisdiction."). And it is impossible to make a finding that conduct was in good faith before the conduct, such as plan distributions, has even occurred. To "deem" a parties conduct as

being in good faith and in compliance with the law, for purposes of exculpation, merely because it was included in a plan is inappropriate.

### Objection No. 4 - The Plan's exculpation and release provisions for professionals are impermissible under Fifth Circuit authority and professional ethical obligations.

36. The definitions of "1125(e) Exculpated Parties" and "Released Parties" include the "Related Parties" of each Person or Entity under such definitions. In turn, "Related Parties" includes financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors, among others. *See* Plan, Art. I.A.146.

37. Attorneys practicing in federal courts in this circuit are subject both to federal and state ethics canons. The Fifth Circuit has held that federal law applies to attorney conduct in federal court. *In re Dresser Industries, Inc.*, 972 F.2d 540, 543 (5th Cir. 1992). In *Dresser Industries,* the Fifth Circuit applied the ABA Model Rules of Professional Conduct, the ABA Model Code of Professional Responsibility, and the American Law Institute's *Restatement of the Law Governing Lawyers. Id.* at 544-45. In *Dresser,* the Fifth Circuit held, after examining relevant federal ethics canons, that an attorney may not sue a client he represents in another matter. *Id.* at 544.

38. ABA Model Rule of Professional Conduct 1.8(h)(1) prohibits lawyers from making "an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement." Similarly, Texas Disciplinary Rule 1.08(g) of Professional Conduct provides:

> A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

Texas Disciplinary Rule of Professional Conduct 1.08(g).

39. The proposed exculpations and releases prospectively limit various professionals' liability to the Releasing Parties, and as such are not permissible. *In re Thru, Inc.*, 2018 WL 5113124 at *22 (finding that plan's exculpatory provisions releasing professionals and other third parties from liability incurred in connection with, among other actions, in formulating or implementing plan, were improper).

40. Furthermore, the Debtors cannot unilaterally release Debtors' counsel from prospective liability given that counsel owes a duty not only to the Debtors but also to the bankruptcy estate. While the Bankruptcy Code does not specifically impose a fiduciary requirement on counsel for debtors-in-possession, "[i]t is undisputed that counsel of a debtor-in-possession owes certain fiduciary duties to both the client debtor-in-possession and the bankruptcy court." *ICM Notes, Ltd. v. Andrews & Kurth, LLP,* 278 B.R. 117, 124 (S.D. Tex. 2002), *aff'd.* 324 F.3d 768 (5th Cir. 2003). Thus, while "counsel to a debtor in possession may not owe a duty directly to creditors, counsel does have an obligation to ensure the debtor properly maintains the estate." *In re Texasoil Enterprises, Inc.*, 296 B.R. 431, 435 (Bankr. N.D. Tex. 2003). *See, e.g., Pacific Lumber*, 584 F.3d at 252 (striking third-party releases of attorneys in conjunction with confirmation of plan of reorganization).

41. Finally, the release and exculpation of estate professionals is unnecessary because they are protected by fee review under section 330 of the Bankruptcy Code, under which the Court evaluates the reasonableness of a professional's services, including whether such services were necessary to the administration of the estate or beneficial at the time the services were rendered. The Fifth Circuit has held a final award of professional fees is *res judicata* as to professional malpractice claims. *Osherow v. Ernst & Young (In re Intelogic Trace, Inc.),* 200 F.3d 382, 387-88 (5th Cir. 2000).

**Objection No. 5 – The Injunction Provision Improperly Extends to Exculpations.**

42. In addition, the Plan improperly attempts to use the Injunction provision to further enforce exculpations.

43. The injunction here does not merely enforce a gatekeeping provision of the sort allowed in *Highland*. Rather it provides that "all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that . . . are subject to exculpation are *permanently enjoined*, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties." Plan, Art. IX.F (emphasis added). This is followed by a long list of actions that are enjoined, including "commencing or continuing in any manner any action or other proceeding *of any kind* on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action." *Id*. (emphasis added).

44. There is no Code provision that authorizes chapter 11 plans or confirmation orders to include injunctions to enforce exculpation provisions. Further, such an injunction is not warranted by the traditional factors that support injunctive relief. Parties seeking an injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'") (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)); *id*. (noting that an

injunction is an "extraordinary remedy"). There is no threatened litigation and no need for an injunction to prevent irreparable harm to either the estates or the exculpated parties. *See Vaughn v. Walthall*, 968 F.3d 814, 825-26 (7th Cir. 2020) (explaining that a party seeking permanent injunctive relief must show that it has suffered an irreparable injury and that it has achieved actual success on the merits); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'") (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)); *id.* (noting that an injunction is an "extraordinary remedy"). An exculpation provision may serve as an affirmative defense in later litigation, but there is no basis for an injunction precluding parties from bringing "exculpated" claims before any court has had an opportunity to determine the effect of the Exculpation Provisions on those claims.

45. Thus, to be consistent with *Highland Capital*, the Injunction provision must exclude "Exculpated Parties, and "1125(e) Exculpated Parties."

### Objection No. 6 – Injunction for Third Party Releases

46. This Court should not approve the injunction enforcing the Releases by barring claims against non-debtors. Even for consensual nondebtor releases, there is no Code provision that authorizes chapter 11 plans or confirmation orders to include injunctions to enforce them. Further, as with the exculpation injunction, such an injunction is not warranted by the traditional factors that support injunctive relief. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

47. The Debtors have made no attempt to show that any of these factors are met. Nor could they. If the release is truly consensual, there is no threatened litigation and no need for an injunction to prevent irreparable harm to either the estates or the released parties. A consensual

release may serve as an affirmative defense in any ensuing, post-effective date litigation between the third-party releasees and releasors, but there is no reason for this Court to be involved with the post-effective date enforcement of those state-law releases. Moreover, this injunction essentially precludes any party deemed to consent to this release from raising any issue with respect to the effectiveness or enforceability of the release (such as mistake or lack of capacity) under applicable non-bankruptcy law.

### **Objection No. 7 – To the Extent the Debtors Liquidate Under the Plan, a discharge under section 1141(d) is inappropriate.**

48. To the extent the Debtors toggle to the Asset Sale option under the Plan and liquidate, the Debtors would not be entitled to a discharge under section 1141(d)(3). Section 1141(d)(3) of the Bankruptcy Code provides that confirmation of a plan does not discharge a debtor if the plan provides for liquidation of all or substantially all of the property of the estate; the debtor does not engage in business after consummation of the plan; and the debtor would be denied a discharge under section 727(a). Accordingly, the Court should not grant a discharge to the Debtors under the plan in accordance with section 1141(d)(3) of the Bankruptcy Code.

49. Accordingly, to the extent that the Debtors liquidate under the Plan, a discharge is improper.

### **Objection No. 8 – The Plan Should Clarify that Claims of Governmental Entities are not Released.**

50. The "police and regulatory power" exception to the automatic stay found at 11 U.S.C. § 362(b)(4) is designed to ensure that the stay "does not impede government's ability to protect public health and safety." *In re Wyly*, 526 B.R. 194, 198 (Bankr. N.D. Tex. 2015).

51. The Debtors should modify the Plan to clarify that no party shall be released from any causes of action or proceedings brought by any governmental entity in accordance with its

regulatory functions, including but not limited to criminal and environmental matters. The U.S. Trustee requests that the Debtors be required to include the following language in the Plan or order confirming the same:

> Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in the Confirmation Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person.

## **CONCLUSION**

52.     For the reasons above, the Court should deny approval of the Disclosure Statement absent modification detailed herein to the Plan and its related solicitation materials and grant such other and further relief as it may deem just and proper.

**WHEREFORE**, the U.S. Trustee respectfully requests this Court to deny the Solicitation Motion and grant such other and further relief as it may deem just and proper.

Dated: November 1, 2024    Respectfully Submitted,

KEVIN M. EPSTEIN
UNITED STATES TRUSTEE


By: /s/ Andrew Jiménez
Andrew Jiménez
U.S. Department of Justice
United States Trustee Program

District of Columbia Bar 991907
Email: Andrew.Jimenez@usdoj.gov
515 Rusk Street, Suite 3516
Houston, TX 77002
(713) 718-4668
(713) 718-4670 Fax

### CERTIFICATE OF SERVICE

I certify that, on November 1, 2024, a true and correct copy of foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

/s/ Andrew Jiménez
Andrew Jiménez