**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| VERTEX ENERGY, INC., *et al.*,[1] | ) | Case No. 24-90507 (CML) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |

## CONSENT DECREE AND ENVIRONMENTAL SETTLEMENT AGREEMENT

This Consent Decree and Environmental Settlement Agreement ("Settlement Agreement") is entered into by and among the Debtors (as defined below) in the above-captioned cases and the United States of America on behalf of the United States Environmental Protection Agency ("EPA") to resolve injunctive relief obligations related to the Debtors' federal statutory and regulatory compliance obligations under Section 211(o) of the Clean Air Act, 42 U.S.C. § 7545(o) ("CAA") and the implementing renewable fuel standard regulations issued under the CAA at 40 C.F.R. Part 80, Subpart M (the "RFS Regulations"), as further detailed herein.

### I.     RECITALS

**Bankruptcy Cases Background**

**WHEREAS**, on September 24, 2024, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under title 11 of the United States Code (the "Bankruptcy Code");

---

[1] A complete list of each of the Debtors in the Chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.veritaglobal.net/vertex/. The location of the Debtors Vertex Energy, Inc.'s corporate headquarters and the Debtors' service address in the Chapter 11 cases is 1331 Gemini Street Suit 250, Houston, Texas 77058.

**WHEREAS**, on September 25, 2024, the United States Bankruptcy Court for the Southern District of Texas (this "Bankruptcy Court") entered an order authorizing the joint administration and procedural consolidation of the above-captioned chapter 11 cases (the "Bankruptcy Cases") pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure [Doc. No. 39];

**WHEREAS**, on September 25, 2024, the Bankruptcy Court entered an order approving, among other things, certain procedures for the Debtors to conduct a sale of all, or substantially all, of the Debtors' assets [Doc. No. 55];

**WHEREAS**, on September 25, 2024, the Debtors filed a chapter 11 plan [Doc. No. 21], and, on November 17, 2024, subsequently filed an amended chapter 11 plan [Doc. No. 425] (as may be amended, modified, or supplemented from time to time, the "Plan");[2]

**WHEREAS**, the Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

**WHEREAS**, the Debtors' Plan provides for either (a) the orderly wind down of the Debtors' Estates to the extent the Debtors consummate a sale transaction or (b) a recapitalization of the Debtors' businesses (the "Recapitalization Transaction");

**WHEREAS**, on December 10, 2024, the Debtors filed a *Notice of Cancellation of Auction* [Doc. No. 519] indicating that the Debtors are pursuing the Recapitalization Transaction;

**WHEREAS**, pursuant to the Recapitalization Transaction, the Holders of DIP Claims and/or Term Loan Claims will exchange their debt for equity in the Reorganized Debtors;

**WHEREAS**, the Debtors currently project January 16, 2025, as the date on which the Reorganized Debtors will emerge from their Bankruptcy Cases (the "Plan Effective Date");

---

[2]    Unless stated otherwise, capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Plan.

**Relevant Factual Background**

**WHEREAS**, Debtor Vertex Refining Alabama LLC ("Vertex Refining"), a Delaware limited liability company, conducts all of the Debtors' transportation fuels refining operations;

**WHEREAS**, Vertex Refining's primary asset is a refinery ("Refinery") located in Mobile, Alabama, that can process up to 88,000 barrels per day (bpd) of crude oil into gasoline, ultra-low sulfur diesel, jet fuel, vacuum gas oil (which can be used to feed refinery operations and as a low sulfur fuel for ships) and other products;

**WHEREAS**, a majority of the gasoline that the Refinery produces is sold in the Mobile, Alabama area;

**WHEREAS**, Debtor Vertex Energy, Inc. ("Vertex Energy"), incorporated in Nevada and headquartered in Houston, Texas, is the parent company of Vertex Refining;

**CAA Statutory and RFS Regulatory Authority and Related Background**

**WHEREAS**, Section 211(o) of the CAA contains the renewable fuels requirements and mandates that certain volumes of renewable fuel be sold into commerce in the United States beginning in 2006;

**WHEREAS**, pursuant to the RFS Regulations, the EPA establishes annual renewable volume obligations (each, an "RVO," and collectively, the "RVOs") standards based on the CAA volume requirements and projections of fuel production for the upcoming year; the EPA then converts the standards into a compliance percentage;

**WHEREAS**, pursuant to 40 C.F.R. § 80.1406(b), obligated parties, which include refiners who produce gasoline or diesel fuel within the 48 contiguous states and/or Hawaii, must demonstrate compliance with the applicable percentages annually;

**WHEREAS**, the RFS Regulations require obligated parties to either blend renewable fuels into gasoline or diesel fuel or purchase credits, known as renewable identification numbers ("RINs"), to meet their RVOs during each annual compliance period (each, a "Compliance Period"), which runs from January 1 to December 31 of each calendar year, and to retire such RINs by the compliance deadline as specified at 40 C.F.R. § 80.1451(a)(1) (each, a "Compliance Deadline");

**WHEREAS**, pursuant to 40 C.F.R. § 80.1461(c), a parent company is liable for any violation of the RFS Regulations committed by its subsidiaries;

**WHEREAS**, Vertex Refining, as the owner and operator of the Refinery, is subject to Section 211(o) of the CAA, 42 U.S.C. § 7545(o), and complying with the requirements of the RFS Regulations;

**WHEREAS**, Vertex Energy, as the parent company of Vertex Refining, is liable for any violation of the RFS Regulations pursuant to 40 C.F.R. § 80.1461(c) in its capacity as such;

**WHEREAS**, pursuant to 40 C.F.R. § 80.1427(b), obligated parties are permitted to carry their RVOs forward one year, provided they do not carry a deficit into the next year;

**WHEREAS**, Vertex Refining carried a portion of its RVOs for the 2023 Compliance Period forward into the 2024 Compliance Period (the "2023 Deficit Carryover");

**WHEREAS**, pursuant to 40 C.F.R. §§ 80.1427 and 80.1451(f), Vertex Refining is required to retire RINs in satisfaction of the 2023 Deficit Carryover plus Vertex Refining's RVOs for the 2024 Compliance Period (together with the 2023 Deficit Carryover, the "2023-2024 RVOs") by the Compliance Deadline for the 2024 Compliance Period, which is March 31, 2025;

**WHEREAS**, Vertex Refining and Vertex Energy contend that each does not have the financial means to purchase and retire the requisite RINS based on its RVO obligations, including the incurred 2023-2024 RVOs;

**WHEREAS**, the United States, on behalf of the EPA, would have objected to Confirmation of the Plan, *inter alia*, based on the EPA's position that the Plan fails to (a) provide for the Debtors' and Reorganized Debtors' full CAA statutory and RFS regulatory compliance with the Debtors' 2023-2024 RVOs and (b) properly harmonize bankruptcy and environmental law;

**WHEREAS**, the United States and the Debtors have in good faith negotiated this Settlement Agreement to provide for the complete satisfaction of the Debtors' and Reorganized Debtors' 2023-2024 RVOs as required by the CAA and the RFS Regulations as set forth herein;

**WHEREAS**, pursuant to the Recapitalization Transaction, the Reorganized Debtors will emerge from chapter 11 under new ownership and with a new board;

**WHEREAS**, without admitting any liability of any entities listed below, the Debtors recognize that they are obligated to comply with all requirements of this Settlement Agreement, and the Debtors and the United States, on behalf of the EPA, agree to enter into this Settlement Agreement in full satisfaction of all civil claims, obligations, liabilities, and causes of action (collectively, the "Causes of Action") pursuant to the CAA and the RFS Regulations with respect to the Debtors' 2023-2024 RVOs by the United States on behalf of the EPA against the Debtors;

**WHEREAS**, the United States has reviewed the financial information submitted by the Debtors and determined that the Debtors have limited ability to comply with the 2023-2024 RVOs;

**WHEREAS**, the Debtors assert that in the absence of a settlement or in the event an objection to the Plan by the United States were sustained, the Debtors would face a risk of

liquidation and conversion of their Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code;

**WHEREAS**, the United States, on behalf of EPA, and the Debtors (collectively, the "Parties") agree to settle, compromise, and resolve all disputes relating to the 2023-2024 RVOs as provided herein;

**WHEREAS**, the United States has agreed to this Settlement Agreement based on the unique facts and circumstances present in these Bankruptcy Cases, and nothing in this Settlement Agreement shall be treated as having any precedential value in any other non-bankruptcy or bankruptcy matter (outside of these Bankruptcy Cases) with different facts and circumstances;

**WHEREAS**, upon the Bankruptcy Court's approval of the Debtors' entry into the Settlement Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 in connection with confirmation of the Plan, the Debtors, and their successors and assigns, including the Reorganized Debtors, shall agree to comply with the Settlement Agreement;

**WHEREAS**, this Settlement Agreement shall be effective upon its approval by the Bankruptcy Court after the public comment period and the United States moves for the Bankruptcy Court's entry of the Settlement Agreement (the "Settlement Agreement Effective Date");

**WHEREAS**, this Settlement Agreement is fair and reasonable and in the public interest, and is an appropriate means of resolving these matters;

**NOW, THEREFORE**, without any adjudication on any issue of fact or law, and upon the consent and agreement of the Parties by their attorneys and authorized officials, it is hereby agreed as follows:

## II.   **DEFINITIONS**

1.      Terms used in this Settlement Agreement that are defined in the CAA or in the RFS Regulations shall have the meanings assigned to them in the CAA or such RFS Regulations, unless otherwise provided in this Settlement Agreement.  Other capitalized terms used in this Settlement Agreement but not defined herein shall have the meanings ascribed to such terms in the Plan.

## III.   **PARTIES BOUND; SUCCESSION AND ASSIGNMENT**

2.      This Settlement Agreement applies to, is binding upon, and shall inure to the benefit of the signatories hereto, their legal successors and assigns, the Debtors and the Reorganized Debtors.  For the avoidance of doubt, this Settlement Agreement binds the Debtors before the Plan Effective Date and the Reorganized Debtors on and after the Plan Effective Date.  For purposes of this Settlement Agreement, any rights granted to the Debtors that extend after the Plan Effective Date shall also be deemed granted to the Reorganized Debtors and their successor and assigns, subject to any reservations provided for herein.

## IV.   **RIN RETIREMENT REQUIREMENTS**

3.      The Debtors, and after the Plan Effective Date, the Reorganized Debtors, shall retire a total of 18,794,250 unexpired valid RINs no later than March 31, 2025, in full and final satisfaction of all liability under the CAA and the RFS Regulations for the 2023-2024 RVOs.  The Debtors, and after the Plan Effective Date, the Reorganized Debtors, shall retire this total in the following amounts:

    a.      761,064 unexpired valid cellulosic (D3) RINs;

    b.      4,215,327 unexpired valid biomass-based diesel (D4) RINs;

    c.      518,071 unexpired valid advanced renewable fuel (D5) RINs; and

    d.      13,299,788 unexpired valid total renewable fuel (D6) RINs.

4.      The Debtors, and after the Plan Effective Date, the Reorganized Debtors, must retire the RINs identified in Paragraph 3 in the EPA Moderated Transaction System using EMTS Retirement Code 70 – Enforcement Obligation.  The retirement must include the notation "OECA – U.S. v. Vertex Energy, Inc." and indicate which RVO the RIN is being allocated towards in the EMTS transaction comment field of the retirement transaction.

5.      Should the Debtors, and after the Plan Effective Date, the Reorganized Debtors, determine, or be informed by EPA, that any RINs it retired towards satisfying the 2023-2024 RVOs in accordance with Paragraph 3 above are invalid, subject to the provisions of 40 C.F.R. § 80.1474, the Debtors, and after the Plan Effective Date, the Reorganized Debtors, shall retire an equivalent number of valid replacement RINs within 60 calendar days of that event.  Subject to the provisions of 40 C.F.R. § 80.1473, EPA may impose stipulated penalties under Paragraph 16 below, for the Debtors', and after the Plan Effective Date, the Reorganized Debtors', use of invalid RINs to meet the requirements of Paragraph 3.

6.      The Debtors and, after the Plan Effective Date, the Reorganized Debtors, shall not sell any RINs before the Settlement Agreement Effective Date except for RINs these entities are already contractually obligated to sell pre-petition to other parties.

7.      Within 30 calendar days of retiring RINs under Paragraph 3, the Debtors and, after the Plan Effective Date, the Reorganized Debtors shall submit to the United States a compliance report (a "RIN Retirement Report") that documents: (a) the EMTS submission date(s) that the RINs were retired; (b) the number, D-Code and vintage (year) of each RIN that was retired; and (c) the EMTS transaction ID for each RIN retirement transaction.

8.     The RIN Retirement Report under Paragraph 7 must be submitted electronically through the EPA's Central Data Exchange at https://cdx.epa.gov and sent via email to Ryan Bickmore at EPA (bickmore.ryan@epa.gov).

9.     The RIN Retirement Report required by Paragraph 7 shall be signed and certified by such corporate officer of the Debtors and, after the Plan Effective Date, the Reorganized Debtors, that is authorized to make such certification(s) on behalf of the Debtors and, after the Plan Effective Date, the Reorganized Debtors.  The certification required under shall include the following statement:

> I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowingly and willfully submitting a materially false statement.

10.     The reporting requirement of this Settlement Agreement does not relieve the Debtors and, after the Plan Effective Date, the Reorganized Debtors of any reporting obligations required by the CAA or the RFS Regulations, or any other reporting obligation required by any federal, state, or local law, regulation, permit, or other requirement.

11.     Any information submitted pursuant to this Settlement Agreement may be used by the United States in any proceeding to enforce the provisions of this Settlement Agreement and as otherwise permitted by law.

12.     If the Debtors and, after Plan Effective Date, the Reorganized Debtors fail to retire RINs by the compliance deadline set forth in Paragraph 3, the Debtors and, after the Plan Effective Date, the Reorganized Debtors shall be liable for stipulated penalties under Section V below.

## V.    STIPULATED PENALTIES

13.    The Debtors and, after the Plan Effective Date, the Reorganized Debtors, shall be liable for stipulated penalties to the United States for violations of this Settlement Agreement as specified below, unless reduced by the United States in its unreviewable discretion.  A violation includes failing to perform any obligation required by the terms of this Settlement Agreement according to all applicable requirements of this Settlement Agreement and within the specified time schedules established by or approved under this Settlement Agreement.

14.    If the Debtors and, after the Plan Effective Date, the Reorganized Debtors, fail to fully comply with the RIN retirement requirements in Paragraph 3, the Debtors and, after the Plan Effective Date, the Reorganized Debtors, shall pay a stipulated penalty of $5,000 per calendar day per RVO for each calendar day that the Debtors and, after the Plan Effective Date, the Reorganized Debtors, are late meeting the RIN retirement requirements for calendar days 1–20, and $10,000 per calendar day per RVO for calendar days 21–30, and $57,617 for each calendar day thereafter. In addition, the Debtors and, after the Plan Effective Date, the Reorganized Debtors, shall pay a one-time stipulated penalty of $0.50 per RIN not retired by the dates specified in Paragraph 3.

15.    If the Debtors and, after the Plan Effective Date, the Reorganized Debtors, fail to fully comply with the reporting requirement in Paragraph 7, the Debtors and, after the Plan Effective Date, the Reorganized Debtors, shall pay a stipulated penalty of $1,000 per calendar day for each calendar day that the Debtors and, after the Plan Effective Date, the Reorganized Debtors, are late meeting such requirements for calendar days 1–14, $5,000 per calendar day for calendar days 15–30, and $10,000 for each calendar day thereafter.

16.    If the Debtors and, after the Plan Effective Date, the Reorganized Debtors use invalid RINs to meet its obligations under Paragraph 3, the EPA may in its unreviewable discretion

require the Debtors, and after the Plan Effective Date, the Reorganized Debtors, to pay a one-time stipulated penalty of up to $0.40 per invalid RIN unless the Debtors and, after the Plan Effective Date, the Reorganized Debtors, demonstrate that they meet the affirmative defense criteria set forth in 40 C.F.R. § 80.1473(e)(1)-(5).  To assert this affirmative defense, the Debtors and, after the Plan Effective Date, the Reorganized Debtors must submit a written report to the EPA including all pertinent supporting documentation demonstrating that the requirements of 40 C.F.R. § 80.1473(e)(1)-(5) are met.  The written report must be submitted within 30 days of the Debtors and, after the Plan Effective Date, the Reorganized Debtors either discovering or being notified of the invalidity of the RINs at issue.

17.    Stipulated penalties under this Section V shall begin to accrue on the calendar day after performance is due or on such day that the violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue regardless of whether the United States provides the Debtors and, after the Plan Effective Date, the Reorganized Debtors, notice of the violation(s) of this Settlement Agreement.

18.    The Debtors and, after the Plan Effective Date, the Reorganized Debtors, shall pay any stipulated penalty within 30 calendar days of receiving the United States' written demand in accordance with the payment instructions provided in the demand.

19.    The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to it under this Settlement Agreement.

20.    If the Debtors and, after the Plan Effective Date, the Reorganized Debtors, fail to pay stipulated penalties according to the terms of this Settlement Agreement, the Debtors and, after the Plan Effective Date, the Reorganized Debtors, shall be liable for interest on such penalties

accruing as of the date such payment became due in accordance with the statutory judgment interest rate as provided in 28 U.S.C. § 1961.  The interest shall be computed daily from the time the payment is due until the date the payment is made.  The interest shall also be compounded annually.  Nothing in this Paragraph 20 shall be construed to limit the United States from seeking any remedy otherwise provided by law for the Debtors', and after the Plan Effective Date, the Reorganized Debtors' failure to pay any stipulated penalties.

21.     The payment of stipulated penalties and interest, if any, shall not alter in any way the Debtors' and after the Plan Effective Date, the Reorganized Debtors', obligation to complete the performance of the requirements of this Settlement Agreement.

22.     The Debtors' and, after the Plan Effective Date, the Reorganized Debtors', shall not deduct any stipulated penalties paid under this Settlement Agreement in calculating their federal, state, or local income tax.

## VI.     FORCE MAJEURE

23.     "Force Majeure," for purposes of this Settlement Agreement, is defined as any event arising from causes beyond the control of the Debtors, the Reorganized Debtors, any entity controlled by the Debtors or Reorganized Debtors, or any contractors of the Debtors or Reorganized Debtors, each as applicable, that delays or prevents the performance of any obligation under this Settlement Agreement despite the Debtors' or the Reorganized Debtors', as applicable, best efforts to fulfill the obligation.  The requirement that the Debtors and the Reorganized Debtors, as applicable, exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any potential Force Majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  Force Majeure does not include the

Debtors' or the Reorganized Debtors', as applicable, financial inability to perform any obligation under this Settlement Agreement.

24.     If any event occurs or has occurred that may delay the performance of any obligation under this Settlement Agreement, whether or not caused by a Force Majeure event, the Debtors or the Reorganized Debtors, as applicable, shall provide notice orally or by electronic or facsimile transmission to the United States within 72 hours of when the Debtors or the Reorganized Debtors, as applicable, first knew that the Force Majeure event might cause a delay.  Within seven (7) calendar days thereafter, the Debtors or the Reorganized Debtors, as applicable, shall provide in writing to the United States: (a) an explanation and description of the reasons for the delay; (b) the anticipated duration of the delay; (c) all actions taken or to be taken to prevent or minimize the delay; (d) a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; (e) the Debtors' or the Reorganized Debtors', as applicable, rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and (f) a statement as to whether, in the opinion of the Debtors or the Reorganized Debtors, as applicable, such event may cause or contribute to an endangerment to public health, welfare, or the environment.  The Debtors or the Reorganized Debtors, as applicable, shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure.  Failure to comply with the above requirements shall preclude the Debtors or the Reorganized Debtors, as applicable, from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. The Debtors or the Reorganized Debtors, as applicable, shall be deemed to know of any circumstance of which the Debtors, the Reorganized Debtors, an entity controlled by the Debtors

or Reorganized Debtors, or any contractors of the Debtors or Reorganized Debtors, each as applicable, knew or should have known.

25.     The time for performance of the obligations under this Settlement Agreement that are affected by the Force Majeure event will be extended by the United States for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation.  The United States will notify the Debtors or the Reorganized Debtors, as applicable, in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

## VII.   <u>COVENANT NOT TO SUE</u>

26.     With respect to the 2023-2024 RVOs, except as specifically provided in Section VIII herein, upon the Settlement Agreement Effective Date and the Debtors' or the Reorganized Debtors', as applicable, retirement of RINs as set forth in Paragraph 3 of this Settlement Agreement, the United States on behalf of EPA covenants not to sue or assert any civil claims or Causes of Action against the Debtors or the Reorganized Debtors, as applicable, and their successors and assigns pursuant to the CAA and the RFS Regulations relating to their 2023-2024 RVOs.  For the avoidance of doubt, all references to "successors" and "assigns" in this Paragraph shall include successor subsidiaries or successor affiliated entities, and assignee subsidiaries or assignee affiliated entities.

27.     This Settlement Agreement in no way impairs the scope and effect of the Debtors' discharge under section 1141 of the Bankruptcy Code; *provided however*, for the avoidance of doubt, the Debtors or the Reorganized Debtors, as applicable, shall comply with all provisions of this Settlement Agreement.

## VIII.   <u>RESERVATION OF RIGHTS</u>

28.     The covenant not to sue set forth in Section VII does not pertain to any matters other than those expressly specified therein.  The United States specifically reserves, and this Settlement Agreement is without prejudice to: (a) any action to enforce the terms of this Settlement Agreement; (b) liability for civil penalties and injunctive relief for the Debtors' or the Reorganized Debtors, as applicable, post-Settlement Effective Date acts, if any, creating liability under the CAA or RFS Regulations, or under other federal laws, regulations, or permit conditions; and (c) any criminal liability.

29.     The Debtors certify under penalty of perjury that the financial information and documentation that they have provided to the United States fairly and accurately sets forth Debtors' financial circumstances in all material respects as of the respective dates thereof.  This Settlement Agreement shall be subject to Federal Rule of Civil Procedure 60(b).

30.     This Settlement Agreement shall not be construed to create rights in, or grant any cause of action to, any third party not Party to this Settlement Agreement other than as explicitly set forth herein.

## IX.   <u>PUBLIC COMMENT</u>

31.     This Settlement Agreement will be subject to a public comment period of 10 calendar days following publication of a notice in the Federal Register.  The United States reserves the right to withdraw or withhold its consent prior to final approval of the Settlement Agreement by the Bankruptcy Court if the public comments regarding the Settlement Agreement disclose facts or considerations that indicate that this Settlement Agreement is inappropriate, improper, or inadequate.

## X.      JUDICIAL APPROVAL

32.      The Debtors shall incorporate the terms of this Settlement Agreement into the Plan. The Debtors shall move promptly, pursuant to Bankruptcy Rule 9019, for Bankruptcy Court approval of its entry into this Settlement Agreement in connection with confirmation of the Plan and shall exercise commercially reasonable efforts to obtain such approval.  The settlement reflected in this Settlement Agreement shall be subject to final approval by the Bankruptcy Court following the public comment period provide above in Paragraph 31.

## XI.      RETENTION OF JURISDICTION

33.      The Bankruptcy Court shall retain jurisdiction over both the subject matter of this Settlement Agreement and the Parties hereto for the duration of the performance of the terms and provisions of this Settlement Agreement for the purpose of enabling any of the Parties to apply to the Bankruptcy Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or interpretation of this Settlement Agreement or to effectuate or enforce compliance with its terms.

## XII.     EFFECTIVE DATE

34.      Following the public comment process provided for in Section IX, this Settlement Agreement shall be effective upon final approval by the Bankruptcy Court.

35.      If for any reason (a) the Settlement Agreement is withdrawn by the United States as provided in Paragraph 31 or (b) the Settlement Agreement is not approved: (i) this Settlement Agreement shall be null and void and the Parties shall not be bound hereunder; (ii) the Parties shall have no liability to one another arising out of or in connection with this Settlement Agreement; (iii) the Parties will seek a new schedule from the Court for confirmation of a Plan and any

objections thereto; and (iv) this Settlement Agreement shall have no residual or probative effect or value, and it shall be as if it had never been executed.

## XIII.   PLAN OF REORGANIZATION

36.    The Debtors shall not: (a) file a Plan or amend the Plan or the proposed order confirming the Plan in a manner inconsistent with the terms and provisions of this Settlement Agreement; (b) take any other action in the Bankruptcy Cases that is inconsistent with the terms and provisions of this Settlement Agreement; or (c) propose terms for any order confirming the Plan that are inconsistent with this Settlement Agreement.  The United States on behalf of EPA shall not oppose or object to any provision of the Plan or an order confirming the Plan provided that such Plan or proposed order confirming the Plan is not materially inconsistent with this Settlement Agreement.  In the event of any inconsistency between the Plan and this Settlement Agreement, the terms of this Settlement Agreement shall control.  In the event of any inconsistency between the Confirmation Order and this Settlement Agreement, the Settlement Agreement shall control.

## XIV.   AMENDMENTS/INTEGRATION AND COUNTERPARTS

37.    This Settlement Agreement and any other documents to be executed in connection herewith or referred to herein shall constitute the sole and complete agreement of the Parties hereto with respect to the matters addressed herein.  This Settlement Agreement may not be amended except by a writing signed by all the Parties.

38.    The signatories for the Parties each certify that he or she is authorized to enter into the terms and conditions of this Settlement Agreement after the close of the applicable comment period and provision of comments by the United States to the Bankruptcy Court, and to execute and bind legally such party to this document.

39.     This Settlement Agreement may be executed in counterparts, each of which shall constitute an original, and all of which shall constitute one and the same agreement.

## XV.    <u>TERMINATION</u>

40.     After Debtors or the Reorganized Debtors, as applicable, have completed the obligations in Section IV of this Settlement Agreement, they may serve upon the United States a Notice of Termination, stating that they have satisfied the Settlement Agreement requirements, together with all necessary supporting documentation.

41.     Following receipt by the United States of the Notice of Termination, the Parties shall confer informally concerning the Notice and any disagreement that the Parties may have as to whether Debtors or the Reorganized Debtors have satisfactorily complied with the requirements of this Settlement Agreement.  If the United States agrees that the Settlement Agreement may be terminated, the United States shall send to Debtors or the Reorganized Debtors confirmation that the Settlement Agreement has terminated.  If the United States disagrees that the Settlement Agreement may be terminated, the Parties may seek resolution from the Court.

THE UNDERSIGNED PARTY enters into this Settlement Agreement in In re: Vertex Energy, Inc., *et al.*

FOR THE UNITED STATES OF AMERICA:


TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice



KAYCI HINES
Digitally signed by KAYCI HINES
Date: 2024.12.16 18:24:23 -05'00'

KAYCI G. HINES
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC  20044-7611

THE UNDERSIGNED PARTY enters into this Settlement Agreement in In re: Vertex Energy, Inc., *et al.*

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

ROSEMARIE KELLEY
Digitally signed by
ROSEMARIE KELLEY
Date: 2024.12.16
16:56:01 -05'00'

_____
ROSEMARIE A. KELLEY
Director, Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC  20460

MARY E. GREENE
Director, Air Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC  20460

OF COUNSEL:

Ryan Bickmore, Legal Team Lead, Fuels Enforcement Branch
Karen Nelson, Attorney-Advisor, Fuels Enforcement Branch

U.S. Environmental Protection Agency
Office of Enforcement and Compliance Assurance
1200 Pennsylvania Ave., N.W.
Washington, DC  20460

THE UNDERSIGNED PARTY enters into this Settlement Agreement in In re: Vertex Energy, Inc., *et al.*

FOR DEBTORS:

 /s/  *R. Seth Bullock*
R. Seth Bullock
Chief Restructuring Officer
Vertex Energy, Inc.
1331 Gemini Street, Suite 250
Houston, Texas 77058