## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| VERTEX ENERGY, INC., *et al.*,[1] | ) | Case No. 24-90507 (CML) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## ORDER CONFIRMING THE SECOND AMENDED JOINT
## CHAPTER 11 PLAN OF VERTEX ENERGY, INC. AND ITS DEBTOR AFFILIATES

The above-captioned debtors and debtors in possession (collectively, the "Debtors") having:[2]

  a.  entered into that certain restructuring support agreement, dated as of September 24, 2024 (as may be amended, modified, or supplemented from time to time in accordance with its terms, the "RSA");

  b.  commenced, on September 24, 2024 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules");

  c.  Filed,[3] on September 25, 2024, the *Declaration of R. Seth Bullock, Chief Restructuring Officer of Vertex Energy, Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 18], detailing the facts and circumstances of these Chapter 11 Cases;

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vertex. The location of Debtor Vertex Energy, Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 1331 Gemini Street, Suite 250, Houston, Texas 77058.

[2] Capitalized terms used but not otherwise defined in these findings of fact, conclusions of law, and order (collectively, this "Confirmation Order") have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Bankruptcy Code (each as defined herein), as applicable. The rules of interpretation set forth in Article I.B of the Plan apply to this Confirmation Order.

[3] Unless otherwise indicated, use of the term "Filed" herein refers also to the service of the applicable document filed on the docket in these Chapter 11 Cases, as applicable.

d.     continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

e.     Filed, on September 25, 2024, (i) the *Debtors' Joint Chapter 11 Plan of Vertex Energy, Inc. and its Debtor Affiliates* [Docket No. 21] and (ii) the *Disclosure Statement for the Joint Chapter 11 Plan of Vertex Energy, Inc. and its Debtor Affiliates* [Docket No. 22];

f.     Filed, on October 4, 2024, the *Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 141] (the "Disclosure Statement Motion");

g.     Filed, on November 17, 2024, (i) the *Debtors' First Amended Joint Chapter 11 Plan of Vertex Energy, Inc. and its Debtor Affiliates* [Docket No 425] and (ii) the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Vertex Energy, Inc. and its Debtor Affiliates* [Docket No. 426];

h.     obtained, on November 18, 2024, entry of the *Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 431] (the "Disclosure Statement Order"), approving the Disclosure Statement and approving:  (i) the related solicitation and voting procedures (the "Solicitation and Voting Procedures"), (ii) the notice of the hearing to be held to consider confirmation of the Plan (the "Confirmation Hearing" and, such notice, the "Confirmation Hearing Notice"), (iii) the notices of non-voting status  (the "Non-Voting Status Notices"),  (iv) the ballots (the "Ballots"), (v) the Voting Record Date, (vi) the cover letter, (vii) the solicitation materials and documents included in the solicitation packages (the "Solicitation Packages"), (viii) the notice of the filing of the Plan Supplement (as defined herein) (the "Plan Supplement Notice"), and (ix) other forms, notices, and dates and deadlines;

i.     caused the Solicitation Packages, including the Confirmation Hearing Notice, to be distributed on or about November 18, 2024, in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the *Procedures for Complex Chapter 11 Bankruptcy Cases* for the United States Bankruptcy Court for the Southern District of Texas, the Disclosure Statement Order, and the Solicitation and Voting Procedures, as evidenced by the *Certificate of Service* [Docket No. 538]  (together  with  all  the  exhibits  thereto,  the "Solicitation Affidavit");

j.      caused the Confirmation Hearing Notice to be published in *The New York Times* (national edition) on November 22, 2024, as evidenced by the *Proof of Publication* [Docket No. 452] (the "Publication Affidavit," and together with the Solicitation Affidavit, the "Affidavits");

k.      Filed, on December 13, 2024, the *Notice of Filing of Plan Supplement* [Docket No. 531] (the "Initial Plan Supplement");

l.      Filed, on December 16, 2024, the *Notice of Filing First Amended Plan Supplement* [Docket No. 540] (and as may be amended, supplemented, or otherwise modified from time to time, the "First Amended Plan Supplement");

m.      Filed, on December 17, 2024, the *Notice of Filing Second Amended Plan Supplement* [Docket No. 544] (and as may be amended, supplemented, or otherwise modified from time to time, the "Second Amended Plan Supplement");

n.      Filed, on December 18, 2024, the *Notice of Filing Third Amended Plan Supplement* [Docket No. 553] (and as may be amended, supplemented, or otherwise modified from time to time, the "Third Amended Plan Supplement");

o.      Filed, on December 20, 2024, the *Notice of Filing Fourth Amended Plan Supplement* [Docket No. 569] (and as may be amended, supplemented, or otherwise modified from time to time, the "Fourth Amended Plan Supplement)," and together with the Initial Plan Supplement, the First Amended Plan Supplement, the Second Amended Plan Supplement, and the Third Amended Plan Supplement, the "Plan Supplement," and which, for purposes of the Plan (as defined herein) and this Confirmation Order, is included in the definition of "Plan");

p.      Filed, on December 20, 2024, the *Second Amended Joint Chapter 11 Plan of Vertex Energy, Inc. and its Debtor Affiliates* [Docket No. 564] (as may be amended, modified, or supplemented from time to time, the "Plan") attached hereto as **Exhibit A**;

q.      Filed, on December 20, 2024, 2024, the *Declaration of Jeffrey S. Stein, Disinterested Director of Vertex Energy, Inc., in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Vertex Energy, Inc. and its Debtor Affiliates* [Docket No. 565] (the "Stein Declaration");

r.      Filed, on December 20, 2024, 2024, the *Declaration of Douglas McGovern in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Vertex Energy, Inc. and Its Debtor Affiliates* [Docket No. 566]  (the "McGovern Declaration");

s.      Filed, on December 20, 2024, the *Declaration of James Lee Regarding the Solicitation and Tabulation of Votes on the Second Amended Joint Chapter 11 Plan of Vertex Energy, Inc. and its Debtor Affiliates* [Docket No. 567] (the "Voting Report");

t.      Filed, on December 20, 2024, 2024, the *Declaration of R. Seth Bullock, Chief Restructuring Officer of Vertex Energy, Inc., in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Vertex Energy, Inc. and Its Debtor Affiliates* [Docket No. 568] (the "Bullock Declaration" and together with the Stein Declaration, the McGovern Declaration, and the Voting Report, the "Confirmation Declarations"); and

u.      Filed, on December 20, 2024, 2024, the *Debtors' Memorandum of Law in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Vertex Energy, Inc. and its Debtor Affiliates and Omnibus Reply to Objections Thereto* [Docket No. 570] (the "Confirmation Brief").

This Bankruptcy Court having:

a.      entered, on November 18, 2024, the Disclosure Statement Order approving, among other things, the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

b.      set December 18, 2024, at 4:00 p.m. (prevailing Central Time) as the deadline for relevant parties to vote on the Plan (the "Voting Deadline");

c.      set December 18, 2024, at 4:00 p.m. (prevailing Central Time) as the deadline for Filing objections to confirmation of the Plan;

d.      set December 20, 2024, at 1:00 p.m. (prevailing Central Time) as the date and time for the Confirmation Hearing, pursuant to sections 1125, 1126, 1128, and 1129 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018, as set forth in the Disclosure Statement Order;

e.      reviewed the (i) Plan, (ii) the Disclosure Statement, (iii) the Disclosure Statement Motion, (iv) the Disclosure Statement Order, (v) the Solicitation Packages, (vi) the Plan Supplement, (vii) the Confirmation Brief, (viii) the Confirmation Declarations, (ix) the Affidavits, (x) the Confirmation Hearing Notice, and (xi) all Filed pleadings, exhibits, statements, responses, and comments regarding confirmation of the Plan, including all objections, joinders, statements, and reservations of rights;

f.      considered the Restructuring Transactions incorporated and described in the Plan, including the Plan Supplement;

g.      held the Confirmation Hearing on December 20, 2024, at 1:00 p.m. (prevailing Central Time);

h.      heard the statements and arguments made by counsel in respect of Confirmation;

i.      considered all oral representations, testimony, documents, filings, exhibits, and other evidence regarding Confirmation;

j.      overruled (i) any and all objections to the Plan and to Confirmation, except as otherwise stated or indicated on the record, and (ii) all statements and reservations of rights not consensually resolved or withdrawn, unless otherwise indicated; and

k.      taken judicial notice of all pleadings and other documents Filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Bankruptcy Court that the Confirmation Hearing Notice and the opportunity for any party in interest to object to Confirmation of the Plan having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents Filed in support of Confirmation of the Plan and other evidence presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.      Findings and Conclusions.**

1.      The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.      Jurisdiction, Venue, and Core Proceeding.**

2.      This Bankruptcy Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  Consideration of whether the Plan complies with the applicable provisions of the Bankruptcy Code constitutes a core proceeding as

defined in 28 U.S.C. § 157(b)(2).  This Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.

  **C.**  **Eligibility for Relief.**

  3.  The Debtors were and are Entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

  **D.**  **Commencement and Joint Administration of these Chapter 11 Cases.**

  4.  On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  In accordance with the *Order (I) Directing Joint Administration of the Debtors' Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 39], these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.  Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

  **E.**  **Appointment of the Committee.**

  5.  On October 8, 2024, the U.S. Trustee appointed the official committee of unsecured creditors (the "Committee") to represent the interests of the Debtors' unsecured creditors in these Chapter 11 Cases [Docket No. 151].  On October 16, 2024, the U.S. Trustee reconstituted the Committee [Docket No. 178].  The current members of the Committee are: (a) Matheson Tri-Gas, Inc. ("Matheson"), (b) Idemitsu Apollo Renewable, (c) U.S. Bank Trust Company, N.A., (d) Harley Marine Financing LLC, (e) Turner Industries Group, LLC,

(f) United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW"), and (f) Worley Group Inc.

### F. Plan Supplement.

6.     The Debtors Filed (a) the Initial Plan Supplement on December 13, 2024, (b) the First Amended Plan Supplement on December 16, 2024, (c) the Second Amended Plan Supplement on December 17, 2024, (d) the Third Amended Plan Supplement on December 18, 2024, and (e) the Fourth Amended Plan Supplement on December 20, 2024. The Plan Supplement (including as subsequently amended, supplemented, or otherwise modified from time to time in accordance with the Plan) complies with the Bankruptcy Code and the terms of the Plan, and the Debtors provided good and proper notice of the filing of the Plan Supplement in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and all other applicable rules, laws, and requirements. No other or further notice will be required with respect to the Plan Supplement or any of the documents contained therein or related thereto, unless any such documents are further modified. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan, and only consistent therewith, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement and any of the documents contained therein or related thereto on or before the Effective Date.

### G. Modifications to the Plan.

7.     Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan described or set forth in this Confirmation Order constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest under the Plan. These modifications are consistent with the

disclosures previously made pursuant to the Disclosure Statement and the Solicitation Packages served pursuant to the Disclosure Statement Order and notice of these modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases. In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes on the Plan under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims or Interests be afforded an opportunity to change previously cast votes accepting or rejecting the Plan. Accordingly, the Plan is properly before this Bankruptcy Court and all votes cast with respect to the Plan prior to such modifications shall be binding and shall apply with respect to the Plan.

### H. Objections Overruled.

8.     Any resolution or disposition of objections to Confirmation explained or otherwise ruled upon by the Bankruptcy Court on the record at the Confirmation Hearing is hereby incorporated by reference. All unresolved objections, statements, joinders, and reservations of rights, if any, are hereby overruled on the merits (except in connection with unresolved objections to the extent solely related to cure amounts arising under assumed Executory Contracts).

### I. Disclosure Statement Order.

9.     On November 18, 2024, the Bankruptcy Court entered the Disclosure Statement Order, setting December 18, 2024, at 4:00 p.m. (prevailing Central Time) as the deadline for (a) voting to accept or reject the Plan and opt in to the Third-Party Release and (b) objecting to Confirmation of the Plan (the "Objection Deadline").

### J. Burden of Proof—Confirmation of the Plan.

10.     The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance

of the evidence, which is the applicable evidentiary standard for Confirmation.  In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

**K.      Notice.**

11.      As evidenced by the Affidavits and the Voting Report, the Debtors provided due, adequate, and sufficient notice of the commencement of these Chapter 11 Cases, the Plan (and the opportunity to opt in to the Third-Party Release), the Disclosure Statement, the Confirmation Hearing, the Plan Supplement, the Objection Deadline, and all other materials distributed by the Debtors in connection with Confirmation in compliance with the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Bankruptcy Local Rules, and the procedures set forth in the Disclosure Statement Order. Further, on November 22, 2024, the Confirmation Hearing Notice was published in *The New York Times* (national edition) in compliance with Bankruptcy Rule 2002(i) and the Disclosure Statement Order.  Such notice was adequate and sufficient under the facts and circumstances of these Chapter 11 Cases and was made in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Disclosure Statement Order.  No other or further notice is or shall be required.

**L.      Solicitation.**

12.      As described in the Voting Report, the solicitation of votes on the Plan complied with the Solicitation and Voting Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and complied with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable rules, laws, and regulations, including the registration requirements under the Securities Act.

13.     As described in the Voting Report and the Solicitation Affidavit, as applicable, the Solicitation Packages were transmitted and served, including to all Holders in the Voting Classes, in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Bankruptcy Local Rules, the Disclosure Statement Order, and any applicable nonbankruptcy law.  Transmission and service of the Solicitation Packages was timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases.  No further notice is required.

14.     As set forth in the Voting Report, the Solicitation Packages were distributed to Holders in the Voting Classes that held a Claim or Interest as of November 1, 2024 (the "Voting Record Date"), as set by the Disclosure Statement Order.  The establishment and notice of the Voting Record Date was reasonable and sufficient.

15.     The period during which the Debtors solicited acceptances of, or rejections to, the Plan was a reasonable and sufficient period of time for each Holder in the Voting Classes to make an informed decision to accept or reject the Plan.

16.     Under section 1126(f) of the Bankruptcy Code, Holders of Claims in Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) (collectively, the "Unimpaired Classes") are Unimpaired and conclusively deemed to have accepted the Plan.  The Debtors were not required to solicit votes from the Holders of Interests in Class 10 (Interests in Vertex) (the "Deemed Rejecting Class"), which was Impaired and deemed to reject the Plan under the Bankruptcy Code.  Holders of Claims and Interests in Class 8 (Intercompany Claims) and Class 9 (Intercompany Interests) (collectively, the "Deemed Accepting/Rejecting Classes," and together with the Unimpaired Classes and the Deemed Rejecting Class, the "Non-Voting Classes") are Unimpaired and conclusively presumed to have accepted the Plan (to the extent

Reinstated) or are Impaired and deemed to have rejected the Plan (to the extent cancelled and released), and, in either event, are not entitled to vote to accept or reject the Plan.

17.     The Debtors served the Confirmation Hearing Notice on the Debtors' full creditor matrix and served Non-Voting Status Notices on all Non-Voting Classes.  The Confirmation Hearing Notice adequately informed Holders of Claims or Interests of critical information regarding voting on (if applicable) and objecting to the Plan, including deadlines and the inclusion of release, exculpation, and injunction provisions in the Plan, and adequately summarized the terms of the Third-Party Release.  Further, because the form enabling stakeholders to opt in to the Third-Party Release (the "Opt-In Form") was included in both the Ballots and the Non-Voting Status Notices, every known stakeholder, including Unimpaired creditors and equity holders, was provided with the means by which the stakeholders could opt in to the Third-Party Release.

**M.     Voting.**

18.     As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Disclosure Statement, the Disclosure Statement Order, and any applicable nonbankruptcy law, rule, or regulation.

**N.     Exit Term Loan Facility.**

19.     The terms and conditions of the Exit Term Loan Facility and the Reorganized Debtors entry into the Exit Term Loan Facility, including all actions, undertakings, and transactions contemplated thereby, and payment of all fees, and indemnities, and expenses provided for thereunder, are essential elements of the Plan, necessary for the consummation thereof, and in the best interests of the Debtors, the Estates, and their stakeholders.  The Exit Term Loan Facility is critical to the overall success and feasibility of the Plan, and the Debtors

have exercised reasonable business judgment in determining to enter into the Exit Term Loan Facility Documents, which have been negotiated in good faith and at arm's-length.

20.     The Debtors are authorized without further approval of this Bankruptcy Court or any other party to execute and deliver the Exit Term Loan Facility Documents, and execute, deliver, File, record, and issue, all agreements, guarantees, instruments, mortgages, control agreements, certificates, and other documents related or incidental thereto and to perform their obligations thereunder and all transactions contemplated thereby, including the payment or reimbursement of any fees, expenses, losses, damages, or indemnities and the creation or perfection of all Liens in connection therewith, in each case, without further notice to this Bankruptcy Court or further act or action under applicable nonbankruptcy Law, regulation, order, or rule or the vote, consent, authorization, or approval of any Entity.

**O.     Exit Intermediation Facility.**

21.     The terms and conditions of the Exit Intermediation Facility and the Debtors and Reorganized Debtors entry into the Exit Intermediation Facility, including all actions, undertakings, and transactions contemplated thereby, and payment of all fees, and indemnities, and expenses provided for thereunder, are essential elements of the Plan, necessary for the consummation thereof, and in the best interests of the Debtors, the Estates, and their stakeholders.  The Exit Intermediation Facility is critical to the overall success and feasibility of the Plan, and the Debtors have exercised reasonable business judgment in determining to enter into the Exit Intermediation Facility Documents, which have been negotiated in good faith and at arm's-length.

22.     The Debtors are authorized without further approval of this Bankruptcy Court or any other party to execute and deliver the Exit Intermediation Facility Documents, and execute, deliver, File, record, and issue, all agreements, guarantees, instruments, mortgages, control

agreements, certificates, and other documents related or incidental thereto and to perform their obligations thereunder and all transactions contemplated thereby, including the payment or reimbursement of any fees, expenses, losses, damages, or indemnities and the creation or perfection of all Liens in connection therewith, in each case, without further notice to this Bankruptcy Court or further act or action under applicable nonbankruptcy Law, regulation, order, or rule or the vote, consent, authorization, or approval of any Entity.

   **P.   New Term Loan Facility.**

   23.   To the extent applicable, the terms and conditions of the New Term Loan Facility and the Debtors and Reorganized Debtors entry into the New Term Loan Facility, including all actions, undertakings, and transactions contemplated thereby, and payment of all fees, and indemnities, and expenses provided for thereunder, are essential elements of the Plan, necessary for the consummation thereof, and in the best interests of the Debtors, the Estates, and their stakeholders.  The Debtors have exercised reasonable business judgment in determining to enter into the New Term Loan Facility Documents, if any, which have been negotiated in good faith and at arm's-length.

   24.   The Debtors are authorized without further approval of this Bankruptcy Court or any other party to execute and deliver the New Term Loan Facility Documents, if any, and execute, deliver, File, record, and issue, all agreements, guarantees, instruments, mortgages, control agreements, certificates, and other documents related or incidental thereto and to perform their obligations thereunder and all transactions contemplated thereby, including the payment or reimbursement of any fees, expenses, losses, damages, or indemnities and the creation or perfection of all Liens in connection therewith, in each case, without further notice to this Bankruptcy Court or further act or action under applicable nonbankruptcy Law, regulation, order, or rule or the vote, consent, authorization, or approval of any Entity.

Q.      **The GUC Trust.**

25.      As set forth in Article IV of the Plan, on the Effective Date, the Debtors shall transfer, or cause to be transferred, to the GUC Trust all of their rights, title, and interest in the GUC Settlement Assets, and the Debtors and the GUC Trustee shall execute the GUC Trust Agreement and take all steps necessary to establish the GUC Trust in accordance with the Plan, this Confirmation Order, and the GUC Trust Agreement.  The transfers contemplated under the Plan from the Debtors to the GUC Trust shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax.

26.      To the extent that any GUC Settlement Assets cannot be transferred to the GUC Trust because of a restriction on transferability under applicable nonbankruptcy Law that is not superseded or preempted by any provision of the Bankruptcy Code, such GUC Settlement Assets shall be deemed to have been retained by the Reorganized Debtors on behalf of the GUC Trust and the GUC Trust shall be deemed to have been designated as a representative of the Reorganized Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such GUC Settlement Assets on behalf of the Reorganized Debtors for the benefit of the GUC Trust Beneficiaries, until such transfer restrictions are removed or the Reorganized Debtors receive or become entitled to receive the net proceeds of such GUC Settlement Assets that can be distributed.

R.      **Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

27.      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

      (i)     *Proper Classification—Sections 1122 and 1123.*

28.     Article III of the Plan provides for the separate classification of Claims and Interests into ten Classes.  Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests.  The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Accordingly, the Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

      (ii)     *Specified Unimpaired Classes—Section 1123(a)(2).*

29.     Article III of the Plan specifies that Claims, as applicable, in the following Classes are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code:

| Class | Claims |
|-------|--------|
| 1 | Other Secured Claims |
| 2 | Other Priority Claims |

30.     Holders of Intercompany Claims in Class 8 and Holders of Intercompany Interests in Class 9 are either Unimpaired and conclusively presumed to have accepted the Plan or are Impaired and deemed to have rejected the Plan, and, in either event, are not entitled to vote to accept or reject the Plan.  Additionally, Article II of the Plan specifies that Allowed Administrative Claims, Allowed DIP Claims, Allowed Amended Intermediation and Hedge Facility Claims, Allowed Professional Fee Claims, and Allowed Priority Tax Claims will be paid in accordance with the terms of the Plan, although these Claims are not classified under the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

(iii)    *Specified Treatment of Impaired Classes—Section 1123(a)(3).*

31.    Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes (the "<u>Impaired Classes</u>") are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such Classes.

| Class | Claims and Interests |
|-------|----------------------|
| 3 | Term Loan Claims |
| 4 | General Unsecured Claims at Debtors other than Vertex |
| 5 | Other General Unsecured Claims at Vertex |
| 6 | 2027 Convertible Notes Claims |
| 7 | Term Loan Deficiency Claims |
| 10 | Interests in Vertex |

Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

(iv)    *No Discrimination—Section 1123(a)(4).*

32.    The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.   Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

(v)    *Adequate Means for Plan Implementation—Section 1123(a)(5).*

33.    The provisions in Article IV and elsewhere in the Plan, together with the exhibits and attachments to the Plan (including the Plan Supplement), provide, in detail, adequate and proper means for the Plan's implementation, including regarding: (a) the general settlement of Claims and Interests; (b) the authorization for the Debtors and the Reorganized Debtors, as applicable, to take all actions necessary to effectuate the Plan, including those actions necessary or appropriate to effectuate the Restructuring Transactions, including, without limitation, any restructuring transaction steps set forth herein or in the Restructuring Transactions

Memorandum, as applicable, as the same may be modified or amended from time to time prior to the Effective Date; (c) the adoption and authorization of, and entry into, the New Organizational Documents; (d) the funding and sources of consideration for the Plan distributions and the establishment of the GUC Trust; (e) the vesting of assets in the Reorganized Debtors (with the exception of the GUC Settlement Assets transferred or issued to the GUC Trust); (f) except as otherwise provided in the Plan and Confirmation Order, the issuance of New Common Stock; (g) the authorization and approval of the Exit Term Loan Facility, the Exit Intermediation Facility, and the New Term Loan Facility (if any), and, in each case, the transactions contemplated in connection therewith and entry into any agreements related to the same as set forth in the Plan or the Plan Supplement; (h) the cancellation of existing securities and agreements, and the surrender of existing securities (except as otherwise provided therein); (i) the authorization and approval of the Recapitalization Transaction; (j) the appointment of the New Board; (k) the granting of new Liens and security interests to secure the Exit Term Loan Facility, the Exit Intermediation Facility, and the New Term Loan Facility (if any); (l) the preservation and vesting of certain Causes of Action in the Reorganized Debtors, and solely with respect to the GUC Causes of Action, the GUC Trust; (m) the reservation of equity for future distribution in accordance with the terms and conditions of the Management Incentive Plan; (n) the authorization and approval of the Matheson Settlement and the RVO Settlement; and (o) the effectuation and implementation of documents and further transactions.  Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

(vi)    *Voting Power of Equity Securities—Section 1123(a)(6).*

34.    The New Organizational Documents and the Plan prohibit the issuance of non-voting equity securities only to the extent required to comply with section 1123(a)(6) of the

Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

(vii) *Directors and Officers—Section 1123(a)(7).*

35. The manner of selection of any officer, director, or trustee (or any successor of any officer, director, or trustee) of the Reorganized Debtors will be determined in accordance with the Plan and the New Organizational Documents, as applicable, which is consistent with the interests of creditors and equity holders and with public policy. Accordingly, the Plan satisfies the requirement of section 1123(a)(7) of the Bankruptcy Code.

(viii) *Impairment/Unimpairment of Classes—Section 1123(b)(1).*

36. Article III of the Plan impairs or leaves Unimpaired each Class of Claims and Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

(ix) *Assumption—Section 1123(b)(2).*

37. Article V.A of the Plan provides that, on the Effective Date, the Matheson Saraland 1 Agreements shall be deemed assumed by the Reorganized Debtors and all other Executory Contracts or Unexpired Leases will be deemed assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (a) are identified on the Rejected Executory Contracts and Unexpired Leases List; (b) previously expired or terminated pursuant to their own terms; (c) have been previously assumed or rejected by the Debtors pursuant to a Final Order; (d) are the subject of a motion to reject that is pending on the Effective Date; or (e) have an ordered or requested effective date of rejection that is after the Effective Date. The assumption of Executory Contracts and Unexpired Leases may include the assignment of certain of such contracts and leases as set forth in the Plan Supplement.

38.     Article IV.F of the Plan provides that, on the Effective Date, the Reorganized Debtors shall: (a)(i) assume all employment agreements or letters, indemnification agreements, severance agreements, or other agreements entered into with current and former employees, subject to satisfying certain conditions as described in the RSA and Plan; or (ii) enter into new agreements with such employees on terms and conditions acceptable to the Reorganized Debtors and such employee; and (b) assume and/or honor in the ordinary course of business any contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for, among other things, compensation, including any incentive plans, retention plans, health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, supplemental executive retirement plans, change-in-control agreements, and accidental death and dismemberment insurance for the directors, officers, and employees of any of the Company Parties who served in such capacity on or after the effective date of the RSA.  Further, Article V.H provides that, on the Effective Date, the Reorganized Debtors shall be deemed to have assumed the Collective Bargaining Agreement and any agreements, documents, and instruments related thereto.

39.     Accordingly, the Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.

(x)     *Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).*

40.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, the provisions of the Plan constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan.  The

compromises and settlements embodied in the Plan are the result of extensive, arm's-length, good faith negotiations, and preserve value for the Debtors, their Estates, and all their stakeholders, avoid extended, uncertain, time-consuming, and value-destructive litigation, and represent a fair and reasonable compromise of all Claims, Interests, and controversies.  Entry into such compromises and settlements represented a sound exercise of the Debtors' business judgment.  The compromises and settlements in the Plan are fair, equitable, reasonable, and in the best interests of the Debtors and their Estates and satisfy the requirements of applicable Law for approval pursuant to Bankruptcy Rule 9019.

41.    Accordingly, in consideration for the distributions and other benefits provided under the Plan, this Confirmation Order shall constitute the Bankruptcy Court's approval of such settlements, as well as a finding by the Bankruptcy Court that such settlements are in the best interests of the Debtors, their Estates, and the Holders of Claims and Interests and are fair, equitable, and reasonable.

42.    Based upon the representations and arguments of counsel to the Debtors and all other testimony either actually given or proffered and other evidence introduced at the Confirmation Hearing and the full record of the Chapter 11 Cases, this Confirmation Order constitutes the Bankruptcy Court's approval of the settlements embodied in the Plan and this Confirmation Order, because, among other things:  (a) each such settlement reflects a reasonable balance between the possible success of litigation with respect to each of the settled Claims and disputes, on the one hand, and the benefits of fully and finally resolving such Claims and disputes and allowing the Debtors to expeditiously exit chapter 11, on the other hand; (b) absent such settlement, there is a likelihood of complex and protracted litigation involving, among other things, such settlement, with the attendant expense, inconvenience, and delay that have a

possibility to derail the Debtors' reorganization efforts; (c) each of the parties supporting such settlement, including the Debtors, the DIP Lenders, the Required Consenting Term Loan Lenders, and the Committee is represented by counsel that is recognized as being knowledgeable, competent, and experienced; (d) such settlement is the product of arm's-length bargaining and good-faith negotiations between sophisticated parties; and (e) such settlement is fair, equitable, and reasonable and in the best interests of the Debtors, the Reorganized Debtors, their respective Estates and property, creditors, and other parties in interest, will maximize the value of the Estates by preserving and protecting the ability of the Reorganized Debtors to continue operating outside of bankruptcy protection and in the ordinary course of business, and is essential to the successful implementation of the Plan.   Based on the foregoing, the compromises and settlements in the Plan satisfy the requirements of applicable Fifth Circuit Law for approval of settlements and compromises pursuant to Bankruptcy Rule 9019.

### c.    **Debtor Release.**

43.    Article VIII.C of the Plan describes certain releases granted by the Debtors (the "Debtor Release").   The Debtors have satisfied the business judgment standard under Bankruptcy Rule 9019 with respect to the propriety of the Debtor Release.   Each of the Released Parties has made a substantial contribution to the Plan and to the Debtors' reorganization.   The Debtor Release is a necessary and integral element of the Plan, and is fair, equitable, reasonable, and in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

44.    For the reasons set forth herein and in the Confirmation Declarations, the Debtor Release:  (a) reflects a reasonable balance between the possible success of litigation with respect to each of the settled Claims and disputes, on the one hand, and the benefits of fully and finally resolving such Claims and disputes and allowing the Debtors to exit chapter 11 expeditiously, on the other hand; (b) is a good-faith settlement and compromise of the Claims and Causes of

Action released by the Debtor Release; (c) is provided in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitate the Restructuring Transactions and implement the Plan, following extensive, arm's-length negotiations between sophisticated parties represented by able counsel and advisors; (d) is given, and made, after due notice and opportunity for hearing; and (e) serves as a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.  Further, as more fully described in the Stein Declaration, the Disinterested Director analyzed and considered all potential Claims and Causes of Action held by the Debtors and determined that granting the Debtor Release was appropriate and necessary under the circumstances.  The Debtors' or the Reorganized Debtors pursuit of any such Claims or Causes of Action against the Released Parties is not in the best interests of the Estates or the Debtors' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such Claims or Causes of Action.

45.     The Debtor Release appropriately offers protection to parties that participated in the Debtors' restructuring process.  Each of the Released Parties made significant concessions and contributions to these Chapter 11 Cases.  The Debtor Release for the Debtors' current and former directors and officers is appropriate because the Debtors' directors, officers, and managers share an identity of interest with the Debtors, supported and made substantial contributions to the success of the Plan and these Chapter 11 Cases, and actively participated in meetings, and negotiations during these Chapter 11 Cases.  The Debtor Release for the parties to the RSA is appropriate because such parties have actively supported the Plan and agreed to equitize their Claims to deleverage the Debtors' prepetition capital structure, provided the

Debtors with liquidity (both by providing the debtor-in-possession financing and by consenting to the use of cash collateral), and/or otherwise provided financing and made other contributions of value to the Debtors' restructuring.  The Debtor Release for the Committee and each member thereof, and Matheson, in its capacity as party to the Matheson Agreement, is an integral component of the Committee Settlement and the Matheson Settlement, respectively.

46.     The scope of the Debtor Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases.  The Debtor Release is appropriate in light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan.

d.     **Third-Party Release.**

47.     The Third-Party Release, set forth in Article VIII.D of the Plan, is a necessary and integral element of the Plan, is fair, equitable, reasonable, and is in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests.   Also, the Third-Party Release:  (a) is consensual; (b) represents a good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (c) is beneficial to and in the best interests of the Debtors, their Estates, and theirs stakeholders and is important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in these Chapter 11 Cases; (d) is specific in language and scope; (e) is essential to the confirmation of the Plan; (f) is given in exchange for the substantial contributions made and the good and valuable consideration provided by the Released Parties; (g) is a condition to the good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (h) is given and made after due notice and opportunity for hearing; (i) constitutes a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release; (j) facilitated participation of the Released Parties in both the Plan

23

process and the Chapter 11 Cases generally; and (k) was instrumental in developing a plan that maximized value for all of the Debtors' stakeholders.

48.     The Third-Party Release is consensual given that, among other things: (a) the Releasing Parties were provided adequate notice of these Chapter 11 Cases, the Plan, and the deadline to object to Confirmation; (b) Holders of Claims and Interests provided the Third-Party Release solely upon their affirmative election to opt in to the Third-Party Release; (c) the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, and the Non-Voting Status Notice, and the Confirmation Hearing Notice; and (d) the Confirmation Hearing Notice was sent to all parties to receive notice in these Chapter 11 Cases (including those not entitled to vote on the Plan) and published in the *New York Times* (national edition) on November 22, 2024.

e.     **Exculpation.**

49.     The exculpation described in Article VIII.E of the Plan (the "Exculpation") is appropriate under applicable law, and enforceable to the maximum extent allowed by *In re Highland Capital Mgmt., L.P.*, 48 F. 4th 419 (5th Cir. 2022), because it was supported by proper evidence, proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope. Without limiting anything in the Exculpation, each Exculpated Party has participated in these Chapter 11 Cases in good faith and in compliance with applicable Laws with regard to solicitation of votes and distribution of consideration pursuant to the Plan, and is appropriately released and exculpated from any Cause of Action for any claim arising from the Petition Date through the Effective Date related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA and related prepetition transactions, the Postpetition Financing Facilities, the

Postpetition Financing Documents, the Disclosure Statement, the Plan (including, for avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or this Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the RSA, the Disclosure Statement, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpation, including its carveout for actual fraud, willful misconduct, or gross negligence, is fair, reasonable, and appropriate under the circumstances of the Chapter 11 Cases and is consistent with established practice in this jurisdiction.

50.     Solely with respect to the Exculpation, notwithstanding anything to the contrary in the Plan or Plan Supplement, each of the Exculpated Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, in

whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan.  No Entity or Person may commence or pursue a Claim or Cause of Action of any kind against any of the Exculpated Parties that arose or arises from, in whole or in part, a Claim or Cause of Action subject to this paragraph 50 of this Confirmation Order, without this Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim for actual fraud, gross negligence, or willful misconduct against any such Exculpated Party or 1125(e) Exculpation Party and such party is not exculpated; and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Exculpated Party or 1125(e) Exculpation Party.

### f.     **Injunction.**

51.     The injunction provision set forth in Article VIII.F of the Plan is essential to the Plan and is necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Release, the Third-Party Release, and the Exculpation.  The injunction provision is appropriately tailored to achieve those purposes.    Notwithstanding anything to the contrary in this Confirmation Order, no Person or Entity may commence or pursue a Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, the 1125(e) Exculpation Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article VIII.C, VIII.D, or VIII.E of the Plan, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor,

26

Reorganized Debtor, 1125(e) Exculpation Party, Exculpated Party, or Released Party, as applicable.

g.     **Preservation of Causes of Action.**

52.     Pursuant to Article IV.U of the Plan and in accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, each Reorganized Debtor or the GUC Trust, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, and, solely with respect to the GUC Trust, any and all GUC Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' and the GUC Trustee's, as applicable, rights to commence, prosecute, or settle such Causes of Action or, solely with respect to the GUC Trustee, such GUC Causes of Action, shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date.

53.     For the avoidance of doubt, pursuant to the Committee Settlement, unless otherwise retained by the Plan, the Reorganized Debtors expressly waive any and all rights to recover or avoid transfers under sections 547 and 550 (to the extent such Claims arise solely in connection with Claims under section 547 of the Bankruptcy Code) of the Bankruptcy Code against transferees who also received a Bankruptcy Court-approved payment and against contractual counterparties whose agreements have been assumed, go-forward vendors, or other go-forward commercial counterparties with the Reorganized Debtors.  The provisions regarding the preservation of Causes of Action in the Plan, including those contained in the Plan

Supplement, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

> h.   **Lien Release.**

54.     The release and discharge of mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates described in Article VIII.B of the Plan (the "Lien Release") is essential to the Plan and necessary to implement the Plan.  The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

> (xi)   *Additional Plan Provisions—Section 1123(b)(6).*

55.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(xii)   *Cure of Defaults —Section 1123(d).*

56.   Article V.C of the Plan provides for the satisfaction of Cures associated with each Executory Contract and Unexpired Lease to be assumed or assumed and assigned in accordance with section 365 of the Bankruptcy Code or as otherwise agreed between the Debtors and the counterparty to each such assumed or assumed and assigned Executory Contract and Unexpired Lease.  The Debtors or the Reorganized Debtors, as applicable, shall pay the Cure amounts, if any, on the Effective Date or as soon as reasonably practicable thereafter or on such other terms as the parties to such Executory Contracts or Unexpired Leases may agree.  If there is any dispute regarding any Cure, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption or assumption and assignment, such dispute shall be determined in accordance with the terms set forth in Article V.C of the Plan.

57.   The assumption of any Executory Contract or Unexpired Lease and the satisfaction of related Cures in full or as otherwise agreed among the Debtors or Reorganized Debtors, as applicable, and the counterparty to such Executory Contract or Unexpired Lease, pursuant to the Plan, shall result in the full release and satisfaction of any nonmonetary defaults arising from or triggered by the filing of these Chapter 11 Cases, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time on or prior to the effective date of assumption.  As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to assumed Executory Contracts and Unexpired Leases.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**S.**   **Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).**

58.     The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each Debtor:

a.     is eligible to be a debtor under section 109, and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code;

b.     has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

c.     complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Bankruptcy Local Rules, any applicable nonbankruptcy Law, rule and regulation, the Disclosure Statement Order, and all other applicable Law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**T.     Plan Proposed in Good Faith—Section 1129(a)(3).**

59.     The Debtors have proposed the Plan in good faith and not by any means forbidden by Law.  In so determining, the Bankruptcy Court has examined the totality of the circumstances surrounding the Filing of these Chapter 11 Cases, including the RSA, the Plan, the Confirmation Declarations, the process leading to Confirmation, including the overwhelming support of Holders of Claims for the Plan, and the transactions to be implemented pursuant thereto.  These Chapter 11 Cases were Filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the Restructuring Transactions, reorganize, and emerge from these Chapter 11 Cases with a capital and organizational structure that will allow them to conduct their businesses and satisfy their obligations with sufficient liquidity and capital resources.

60.     The Plan is the product of good-faith, arm's-length negotiations by and among the Debtors, the DIP Lenders, the Required Consenting Term Loan Lenders, the Committee, and other parties in interest.  Consistent with the overriding purpose of chapter 11, the Debtors Filed

the Chapter 11 Cases with the belief that the Debtors were in need of reorganization, and the Plan was negotiated and proposed with the intention of accomplishing a successful reorganization and maximizing stakeholder value and for no ulterior purpose. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

### U.     Payment for Services or Costs and Expenses—Section 1129(a)(4).

61.     The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid to Professionals by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

### V.     Directors, Officers, and Insiders—Section 1129(a)(5).

62.     The identities of or process for appointment of the Reorganized Debtors' directors and officers proposed to serve after the Effective Date were disclosed (to the extent known) in the Plan Supplement. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

### W.     No Rate Changes—Section 1129(a)(6).

63.     Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases. The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

### X.     Best Interest of Creditors—Section 1129(a)(7).

64.     The liquidation analysis attached as Exhibit E to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered, prior to, or in connection with the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and

appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.  As a result, the Debtors have demonstrated that the Plan is in the best interests of their creditors, and the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

### Y.      Acceptance by Certain Classes—Section 1129(a)(8).

65.      Classes 1 and 2 constitute the Unimpaired Classes, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. As evidenced by the Voting Report, all of the Holders of Claims in Class 3, and an overwhelming majority of Holders of Claims in Class 4 and Class 5 have voted to accept the Plan.  Nevertheless, because the Plan has not been accepted by Holders of Claims in Class 6 (the "Rejecting Class"), the Debtors seek Confirmation under section 1129(b), solely with respect to the Rejecting Class, rather than section 1129(a)(8) of the Bankruptcy Code.  Holders of Claims and Interests in Classes 8 and 9 are Unimpaired and conclusively presumed to have accepted the Plan (to the extent Reinstated) or are Impaired and deemed to reject the Plan (to the extent cancelled), and, in either event, are not entitled to vote to accept or reject the Plan. Pursuant to the Plan, Holders of Claims and Interests in Class 10 receive no recovery on account of their Claims and Interests and are deemed to reject the Plan.  Although the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to the Rejecting Class and the Deemed Rejecting Class, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Class and the Deemed Rejecting Class, and thus satisfies section 1129(b) of the Bankruptcy Code.  The Debtors did not solicit votes to

accept or reject the Plan from any Holders of Term Loan Deficiency Claims in Class 7 because Class 7 did not have any known Holders of Term Loan Deficiency Claims as of the Voting Record Date.

### Z.   Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).

66.     The treatment of Allowed Administrative Claims, Professional Fee Claims, and Priority Tax Claims, under Article II of the Plan, and Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

### AA.   Acceptance by At Least One Impaired Class—Section 1129(a)(10).

67.     As evidenced by the Voting Report, the Holders of Claims in Class 3, Class 4, and Class 5, each of which is Impaired, voted to accept the Plan by the requisite numbers and amounts of Claims, as determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), as specified under the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

### BB.   Feasibility—Section 1129(a)(11).

68.     The financial projections attached to the Disclosure Statement as <u>Exhibit D</u>, and the other evidence supporting Confirmation of the Plan proffered or adduced by the Debtors at, or prior to, the Confirmation Hearing, or in the Confirmation Declarations Filed in connection therewith (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible and Confirmation is not likely to be followed by the liquidation, or the

need for further financial reorganization, of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan, except as provided in the Plan; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.   Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

### CC.   Payment of Fees—Section 1129(a)(12).

69.   Article XII.C of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).   Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

### DD.   Continuation of Retiree Benefits—Section 1129(a)(13).

70.   The Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.   Article IV.F of the Plan provides that from and after the Effective Date, all retiree benefits, as defined in section 1114 of the Bankruptcy Code, if any, shall continue to be paid in accordance with applicable law.

### EE.   Non-Applicability of Certain Sections—1129(a)(14), (15), and (16).

71.   Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.   The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

### FF.   "Cram Down" Requirements—Section 1129(b).

72.   Notwithstanding the fact that the Rejecting Class has not accepted the Plan and the Deemed Rejecting Class has been deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.   *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.   *Second*, the Plan is fair and equitable with respect to the Rejecting Class and the Deemed Rejecting

34

Class.  The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and (b) no Holder of a Claim in a Class senior to such Class is receiving more than 100% on account of its Claim. Accordingly, the Plan is fair and equitable to all Holders of Claims in the Rejecting Class and all Holders of Interests in the Deemed Rejecting Class.  *Third*, the Plan does not discriminate unfairly with respect to the Rejecting Class or the Deemed Rejecting Class because similarly situated creditors and interest Holders will receive substantially similar treatment on account of their Claims and Interests irrespective of Class.  The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

### GG.    Only One Plan—Section 1129(c).

73.    The Plan (including previous versions thereof) is the only chapter 11 plan Filed in each of these Chapter 11 Cases and, accordingly, satisfies section 1129(c) of the Bankruptcy Code.

### HH.    Principal Purpose of the Plan—Section 1129(d).

74.    No Governmental Unit has requested that the Bankruptcy Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  As evidenced by its terms, the principal purpose of the Plan is not such avoidance.  Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

### II.    Not Small Business Cases—Section 1129(e).

75.    The Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

**JJ.      Good Faith Solicitation—Section 1125(e).**

76.      The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e).  The Debtors and the 1125(e) Exculpation Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support of the Plan and Consummation, including, among other things, the issuance of the New Common Stock, the extension of financing under the DIP Facility, the Exit Term Loan Facility, the Exit Intermediation Facility, the New Term Loan Facility (if any), and the solicitation of acceptances of the Plan, as applicable, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and all other applicable protections and rights provided for in the Plan and this Confirmation Order.

**KK.      Satisfaction of Confirmation Requirements.**

77.      Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**LL.      Likelihood of Satisfaction of Conditions Precedent to the Applicable Effective Date.**

78.      Each of the conditions precedent to the Effective Date, as set forth in Article IX.A of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX.B of the Plan.

**MM.      Implementation.**

79.      All documents necessary to implement the Plan and the Restructuring Transactions contemplated thereby, including those contained in the Plan Supplement, and all

other relevant and necessary or desirable documents (including, but not limited to, the Restructuring Support Agreement, the Exit Term Loan Facility Documents, the Exit Intermediation Facility Documents, the New Term Loan Facility Documents (if any), the New Organizational Documents, and the GUC Trust Agreement) have been negotiated in good faith and at arm's-length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements, not avoidable and not in conflict with any federal, state, or foreign Law.

### NN.   Disclosure of Facts.

80.     The Debtors have disclosed all material facts regarding the Plan, including with respect to issuance of the New Common Stock, execution of the Exit Term Loan Facility, Exit Intermediation Facility, New Term Loan Facility (if any), the GUC Trust Agreement, and the New Organizational Documents, prior to the Confirmation Hearing, and the fact that each applicable Debtor will emerge from its Chapter 11 Case as a validly existing corporation, limited liability company, partnership, or other form, as applicable, with separate assets, liabilities, and obligations, as set forth in the Plan.

### OO.   Good Faith.

81.     The Debtors and their respective directors, officers, management, counsel, advisors, and other agents have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Estates for the benefit of their stakeholders.  The Plan accomplishes this goal.  Accordingly, the Debtors or the Reorganized Debtors, as applicable, and their respective officers, directors, and advisors have been, are, and will continue to act in good faith if they proceed to:  (a) consummate the Plan, the GUC Trust Agreement, the Restructuring Transactions, and all agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order and the Plan to

reorganize the Debtors' businesses and effectuate the New Organizational Documents and the other Restructuring Transactions.

**ORDER**

IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

82.     **Findings of Fact and Conclusions of Law.**   The above findings of fact and conclusions of law, as well as any additional findings of fact and conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing, are hereby incorporated in this Confirmation Order.

83.     **Confirmation of the Plan.**   The Plan is approved in its entirety and **CONFIRMED** under section 1129 of the Bankruptcy Code.  The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.

84.     This Confirmation Order approves the Plan Supplement, including the documents contained therein, as they may be amended through and including the Effective Date in accordance with and as permitted by the Plan, subject to the consent rights set forth therein and in the RSA and all other Definitive Documents.  The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference and are an integral part of this Confirmation Order; *provided* that, if there is any direct conflict between the terms of the Plan (including the Plan Supplement) and the terms of this Confirmation Order, the terms of this Confirmation Order shall control solely to the extent of such conflict.

85.     **Objections Overruled.**  All objections, statements, joinders, and reservations of rights pertaining to Confirmation that have not been withdrawn, waived, or settled before entry of this Confirmation Order are hereby OVERRULED and DENIED on the merits (except in

connection with unresolved objections to the extent solely related to cure amounts arising under assumed Executory Contracts).

86. All objections to Confirmation not Filed and served prior to the Objection Deadline set forth in the Confirmation Hearing Notice, if any, are deemed waived and shall not be considered by the Bankruptcy Court.

87. **Deemed Acceptance of Plan.** In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan.

88. **No Action Required.** Under section 1142(b) of the Bankruptcy Code and any other comparable provisions under applicable Law, no action of the respective directors, equity holders, managers, or members of any of the Debtors is required to authorize any of the Debtors or the Reorganized Debtors, as applicable, to enter into, execute, deliver, File, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Restructuring Transactions, including the Recapitalization Transaction, and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including the Exit Term Loan Facility, the Exit Intermediation Facility, the New Term Loan Facility (if any), the New Organizational Documents, and the appointment and election of the members of the New Board and the officers, directors, and/or managers of each of the Reorganized Debtors, as applicable.

89. Subject to the terms of Article IV of the Plan, the Debtors, the Reorganized Debtors, and the GUC Trustee, as applicable, are also authorized from and after the date of entry of this Confirmation Order to negotiate, execute, issue, deliver, implement, File, or record any

contract, instrument, release, or other agreement or document or take any action necessary or appropriate to implement the transactions contemplated by the Plan.

90.    **Binding Effect.**    Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Restructuring Transactions (and any documents related or ancillary thereto, including any Liens and security interests and, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and not subject to avoidance or other challenge, legal or otherwise, and deemed binding upon the Debtors, the Reorganized Debtors, any and all Holders of Claims or Interests (irrespective of whether Holders of such Claims or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

91.    **Incorporation by Reference.**    The terms and provisions of the Plan are incorporated by reference and are an integral part of this Confirmation Order.  The terms of the Plan, the Plan Supplement, all exhibits thereto, this Confirmation Order, the Definitive Documents, and all other relevant and necessary documents shall, on and after the Effective Date, be binding in all respects upon, and shall inure to the benefit of, the Debtors, their Estates and their creditors, and their respective successors and assigns, non-Debtor affiliates, any affected third parties, all Holders of Interests, all Holders of any Claims, whether known or unknown, against the Debtors, including, but not limited to, all contract counterparties, leaseholders, Governmental Units, and any trustees, examiners, administrators, responsible

officers, estate representatives, or similar Entities for the Debtors, if any, subsequently appointed in any of the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Chapter 11 Cases, and each of their respective affiliates, successors, and assigns.

92.     **Vesting of Assets in the Reorganized Debtors.**  Except as otherwise provided in the Plan (including, for the avoidance of doubt, the Plan Supplement, the Restructuring Transactions Memorandum, and the vesting of the GUC Settlement Assets into the GUC Trust), or any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, the Plan or Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action (except for the GUC Causes of Action) that are not released, waived, or extinguished pursuant to the Plan, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtors, and/or any successors, assigns, or transferees of the applicable Debtors or Reorganized debtors, including in connection with the Restructuring Transactions, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances and interests, including the RVO Liabilities, except as set forth in the RVO Settlement Agreement.  On and after the Effective Date, except as otherwise provided herein or in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action (except for the GUC Causes of Action) without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules in all respects.

93.     After the Effective Date, a certified copy of this Confirmation Order may be filed with the appropriate clerk or recorded with the recorder of any federal, state, province, county, or local authority, whether foreign or domestic, to act to effectuate the transfer of all property in each Estate (with the exception of the GUC Settlement Assets transferred or issued to the

GUC Trust and governed by the Plan and the GUC Trust Agreement) to the Reorganized Debtors, vesting the Reorganized Debtors with all right, title, and interest of the Debtors to the property in each Estate, free and clear of all Liens, Claims, Interests, and other encumbrances of record.

94.     **Effectiveness of All Actions.**  All actions contemplated by the Plan, including all actions contemplated by or in connection with the Recapitalization Transaction, the Exit Term Loan Facility, the Exit Intermediation Facility, the New Term Loan Facility (if any), the New Organizational Documents, the GUC Trust Agreement, and any other Definitive Documents are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Bankruptcy Court, or further action by the respective officers, directors, managers, members, or equity holders of the Debtors or the Reorganized Debtors and with the effect that such actions had been deemed taken by unanimous action of such officers, directors, managers, members, or equity holders.

95.     **Release, Exculpation, Discharge, and Injunction Provisions.**  The release, exculpation, discharge, and injunction provisions embodied in the Plan, including for the avoidance of doubt, those contained in Article VIII.A–F of the Plan, are incorporated herein in their entirety, are hereby approved and authorized in their entirety, and shall be immediately effective and binding on the Effective Date on all Persons and Entities to the extent provided in the Plan, without further order or action by this Bankruptcy Court.

96.     **Preservation of Causes of Action.**  Except as otherwise provided in the Plan, this Confirmation Order, or in any contract, instrument, release, or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b)(3) of the Bankruptcy Code, each Reorganized Debtors or the GUC Trust (solely with respect to the GUC Causes of

Action), as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors or GUC Causes of Action, as applicable, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and, as applicable, the Reorganized Debtors' and the GUC Trust's (solely with respect to the GUC Causes of Action) rights to commence, prosecute, or settle such retained Causes of Action or GUC Causes of Action, as applicable, shall be preserved notwithstanding the occurrence of the Effective Date or any other provision of the Plan to the contrary, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII thereof, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date.

97.     **Executory Contracts and Unexpired Leases.**  The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption, assumption and assignment, Cure, or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

98.     For the avoidance of doubt, on the Effective Date, except as otherwise provided in the Plan or this Confirmation Order, the Matheson Saraland 1 Agreements and all other Executory Contracts or Unexpired Leases shall be deemed assumed by the applicable Reorganized Debtor or Reorganized Vertex, as applicable, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (a) are identified on the Rejected Executory Contracts and Unexpired Leases List; (b) previously expired or terminated pursuant to their own terms; (c) have been previously assumed or rejected

by the Debtors pursuant to a Final Order; (d) are the subject of a motion to reject that is pending on the Effective Date; or (e) have an ordered or requested effective date of rejection that is after the Effective Date.

99.     For the avoidance of doubt, unless otherwise provided in the Plan, and subject to Article V and Article IV.F thereof, the Reorganized Debtors shall:  (a)(i) assume all employment agreements or letters, indemnification agreements, severance agreements, or other agreements entered into with current and former employees subject to satisfying certain conditions as described in the RSA and the Plan; or (ii) enter into new agreements with such employees on terms and conditions acceptable to the Reorganized Debtors and such employee; and (b) assume and/or honor in the ordinary course of business any contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for, among other things, compensation, including any incentive plans, retention plans, health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, supplemental executive retirement plans, change-in-control agreements, and accidental death and dismemberment insurance for the directors, officers, and employees of any of the Company Parties who served in such capacity on or after the effective date of the RSA.

100.    Unless a party to an Executory Contract or Unexpired Lease has objected no later than the objection deadline specified in the Plan to the Cure amounts and any assumption or assumption and assignment of such Executory Contract or Unexpired Lease identified in the Plan Supplement and any amendments thereto, as applicable, the Debtors or the Reorganized Debtors, as applicable, shall pay such Cure amounts in accordance with the terms of the Plan or as otherwise agreed between the Debtors and the counterparty to each such assumed or assumed

and assigned Executory Contract or Unexpired Lease.  The assumption or assumption and assignment of any Executory Contract or Unexpired Lease, pursuant to the Plan or otherwise, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including relating to such assumption and assignment, defaults of provisions relating to any anti-assignment provisions or restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment.  Any disputed Cure amounts shall be determined in accordance with the procedures set forth in Article V.C of the Plan, and applicable bankruptcy and nonbankruptcy law.  For the avoidance of doubt, any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan or otherwise may not be terminated on account of such assumption or assumption and assignment or on account of the Plan, the transactions contemplated therein, or any change of control or ownership interest composition that may occur at any time before or on the Effective Date.  Each Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan shall revest in, and be fully enforceable by, the applicable Reorganized Debtors in accordance with its terms, including in accordance with any amendments executed by the Debtors and the counterparties to the applicable Executory Contract or Unexpired Lease during these Chapter 11 Cases and effective upon the assumption by the Debtors, except as modified by the provisions of the Plan, this Confirmation Order, or any order of this Bankruptcy Court authorizing and providing for its assumption; *provided* that, prior to the Effective Date and in connection with such assumption, any such terms that are rendered unenforceable by the provisions of the Plan or the Bankruptcy Code shall remain unenforceable solely in connection therewith.

101.    The Debtors' determinations regarding the assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims or Interests, and other parties in interest in these Chapter 11 Cases.  This Confirmation Order shall constitute a Final Order approving the assumptions, assumptions and assignments, and rejections of the Executory Contracts and Unexpired Leases as set forth in the Plan and the Assumed Executory Contracts and Unexpired Leases List pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

102.    **Plan Supplement**.  The Plan Supplement contains the following documents (each as defined in the Plan):  (a) the Assumed Executory Contracts and Unexpired Leases List; (b) the Rejected Executory Contracts and Unexpired Leases List; (c) the Schedule of Retained Causes of Action; (d) the Matheson Mutual Release Agreement; (e) the New Organizational Documents (if any); (f) the Exit Intermediation Facility Term Sheet and Exit Intermediation Facility Documents (if any); (g) the Restructuring Transactions Memorandum; (h) the identity of the New Board, if applicable;  (i) the  GUC  Trust  Agreement;  (j) solely  to  the  extent  required  under section 1129(a)(5) of the Bankruptcy Code, the MIP Documents; (k) the RVO Settlement Agreement; and (l) the Exit Term Loan Commitment Letter and Term Sheet and the Exit Term Loan Credit Agreement.

103.    The Debtors reserve the right to alter, amend, modify, or supplement any document in the Plan Supplement in accordance with the RSA and the Plan, including the consent rights set forth therein, at any time before the Effective Date of the Plan or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court. Notwithstanding anything in this Confirmation Order, the documents included in the Plan

Supplement, whether filed by the Debtors prior to or after the Confirmation Hearing, remain subject in all respects to the consent, approval, and similar rights contained in the RSA and the Plan.

104. **Restructuring Transactions**.  Subject to the terms of the RSA and the Plan, the Debtors or Reorganized Debtors, as applicable, are hereby authorized, immediately upon entry of this Confirmation Order (but subject to the occurrence of the Effective Date), to enter into and take all steps desirable or necessary to effectuate the Restructuring Transactions, including the Recapitalization Transaction, the entry into and consummation of the transactions contemplated by the Plan, the Plan Supplement, and the New Organizational Documents, as the same may be modified in accordance with the RSA or the Plan from time to time prior to the Effective Date (including, without limitation, the Recapitalization Transaction and any restructuring transaction steps set forth in the Restructuring Transactions Memorandum or other exhibits to or referred to in the Plan Supplement), and may take any actions as may be necessary or appropriate to effect a corporate restructuring of their respective businesses or a corporate restructuring of the overall corporate structure of the Reorganized Debtors, in each case as and to the extent provided in the Plan.  Any transfers of assets, Claims, or equity interests effected or any obligations incurred through the Restructuring Transactions as contemplated by and in accordance with the RSA and the Plan (including the deemed contributions of Claims or the transfers of assets of and/or Claims and Liens against a Debtor or Reorganized Debtor or its property contemplated in the Restructuring Transactions Memorandum) are hereby approved and shall be deemed not to constitute a fraudulent conveyance, fraudulent transfer, or undervalue transaction or any similar avoidable or voidable transaction and shall not otherwise be subject to avoidance, recharacterization, or subordination for any purposes whatsoever and shall not constitute an

unfair preference or a preferential transfer, fraudulent conveyance, or any similar avoidable or voidable transaction under the Bankruptcy Code or any applicable Law, whether federal, state, or foreign Law.  Except as otherwise provided in the Plan, each Reorganized Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, under the applicable Law in the jurisdiction in which such applicable Debtor is incorporated or formed; *provided* that, in accordance with the New Organizational Documents, Reorganized Vertex shall be redomiciled in Delaware.  The Debtors or the Reorganized Debtors, as applicable, are hereby authorized, immediately upon entry of this Confirmation Order, without the need to seek any third-party consents, corporate approvals, or further approvals of this Bankruptcy Court, to take any and all actions necessary to implement the Restructuring Transactions contemplated by the Restructuring Transactions Memorandum and consistent with the Plan, including the transfers of assets of and/or Claims and Liens against a Debtor or Reorganized Debtor, as applicable, or its property.

105.    **Cancellation of Existing Securities and Agreements.**  On the Effective Date, except as otherwise provided in the Plan or this Confirmation Order, all notes, instruments, certificates, and other documents evidencing Claims or Interests, including credit agreements, warrant agreements, and indentures, shall automatically be deemed cancelled, discharged, and of no further force and effect, and the obligations of the Debtors and any non-Debtor Affiliate thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect, and the DIP Agent, the Agent, and the 2027 Convertible Notes Trustee shall be released from all duties and obligations thereunder.  Holders of or parties to such

cancelled instruments, certificates, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan or this Confirmation Order; *provided*, *however*, that provisions of the Term Loan Agreement or the 2027 Convertible Notes Indenture that survive the termination of the Term Loan Agreement or the 2027 Convertible Notes Indenture, as applicable, pursuant to their respective terms shall continue in full force and effect.

106.    Notwithstanding the foregoing or anything to the contrary herein, any such agreement that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of, as applicable: (a) enabling Holders of Allowed Claims under such agreements to receive distributions under the Plan as provided therein, and (b) allowing and preserving the rights of the DIP Agent, the Agent, the 2027 Convertible Notes Trustee, and any other applicable paying agent or trustee to (i) make distributions in satisfaction of Allowed Claims under such agreements; (ii) maintain and exercise their respective charging liens, including the 2027 Convertible Notes Trustee Charging Lien, against any such distributions, and to preserve any rights of the DIP Agent, the Agent, and the 2027 Convertible Notes Trustee to payment of fees and expenses as against any distributions to the Holders, including any rights to priority of payment and/or to exercise charging liens (if any) and enforce its rights under such agreement; (iii) seek compensation and reimbursement for any reasonable and documented fees and expenses incurred in making such distributions; (iv) maintain and enforce any right to indemnification, expense reimbursement, contribution, or subrogation or any other claim or entitlement; (v) exercise their rights and obligations relating to the interests of their Holders; and (vi) appear and be heard in these Chapter 11 Cases.

107.    Upon the final distribution in accordance with Article VI of the Plan, or notice from the Debtors or the Reorganized Debtors, as applicable, that there will be no distribution on account of 2027 Convertible Notes Claims, (a) the 2027 Convertible Notes shall thereafter be deemed null, void, and worthless, and (b) at the request of the 2027 Convertible Notes Trustee, DTC shall take down the relevant position relating to the 2027 Convertible Notes without any requirement of indemnification or security on the part of the Debtors, the Reorganized Debtors, the 2027 Convertible Notes Trustee, or any other Entity.

108.    **Distributions.**  The procedures governing distributions in Article VI of the Plan shall be, and hereby are, approved in their entirety.

109.    **Subordination.**    Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

110.    **Release of Liens.**  Except as otherwise provided in the Exit Term Loan Facility Documents, Exit Intermediation Facility Documents, New Term Loan Facility Documents (if any), the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.1 of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns.  Any

Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of this Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

111.  **Exit Term Loan Facility**.  On the Effective Date, the Reorganized Debtors shall enter into the Exit Term Loan Facility, the terms of which will be set forth in the Exit Term Loan Facility Documents.  Confirmation of the Plan shall be deemed approval of the Exit Term Loan Facility and Exit Term Loan Facility Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization of the Reorganized Debtors to enter into and execute the Exit Term Loan Facility Documents and such other documents as may be required to effectuate the treatment afforded by the Exit Term Loan Facility.  Execution of the Exit Term Loan Facility Credit Agreement by the Exit Term Loan Facility Agent shall be deemed to bind all Holders of Term Loan Claims and all Exit Term Loan Facility Lenders as if each such Holder or Exit Term Loan Facility Lender had executed the Exit Term Loan Facility Credit Agreement with appropriate authorization.

112.    On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Term Loan Facility Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Term Loan Facility Documents, (c) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Term Loan Facility Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable nonbankruptcy law.  The Reorganized Debtors and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other Law that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable Law to give notice of such Liens and security interests to third parties.

113.    **Exit Intermediation Facility.**  On the Effective Date, the Reorganized Debtors shall enter into the Exit Intermediation Facility, the terms, conditions, structure, and principal amount of which will be set forth in the Exit Intermediation Facility Term sheet and the Exit Intermediation Facility Documents, which shall be in form and substance reasonably acceptable to the Reorganized Debtors and the Required Consenting Term Loan Lenders.  Confirmation of the Plan shall be deemed approval of the Exit Intermediation Facility, including the Exit

Intermediation Facility documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization of the Reorganized Debtors to enter into and execute the Exit Intermediation Facility Documents and such other documents as may be required to effectuate the treatment afforded by the Exit Intermediation Facility.

114.    On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Intermediation Facility Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Intermediation Facility Documents, (c) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Intermediation Facility Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtors and the persons and entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that

otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

115.     **New Term Loan Facility.**   To the extent applicable, on the Effective Date, the Reorganized Debtors shall enter into the New Term Loan Facility, the terms of which will be set forth in the New Term Loan Facility Documents.   Confirmation of the Plan shall be deemed approval of the New Term Loan Facility and New Term Loan Facility Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization of the Reorganized Debtors to enter into and execute the New Term Loan Facility Documents and such other documents as may be required to effectuate the treatment afforded by the New Term Loan Facility.   Execution of the New Term Loan Facility Agreement by the New Term Loan Facility Agent shall be deemed to bind all Holders of Term Loan Claims and all New Term Loan Facility Lenders as if each such Holder or New Term Loan Facility Lender had executed the New Term Loan Facility Agreement with appropriate authorization.

116.     On the Effective Date, all of the Liens and security interests to be granted in accordance with the New Term Loan Facility Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New Term Loan Facility Documents, (c) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the New Term Loan Facility Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any

applicable non-bankruptcy law.  The Reorganized Debtors and the persons and entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

117.  **New Organizational Documents and the Issuance of New Common Stock.** The terms of the New Organizational Documents, attached to the Plan Supplement as Exhibit E, as may be amended, restated, amended and restated, supplemented or modified on or before the Effective Date consistent with the RSA and the Plan, are approved in all respects.  To the extent any New Organizational Document is not attached to the Plan Supplement as of the entry of this Confirmation Order, such New Organizational Document is approved to the extent it is consistent with this Confirmation Order, the Plan, and the Plan Supplement (including any applicable consent rights set forth therein).  The obligations of Reorganized Vertex related thereto will, upon execution, constitute legal, valid, binding, and authorized obligations of each of the Debtors or Reorganized Vertex, as applicable, enforceable in accordance with their terms and not in contravention of any state, federal, or foreign Law.  To the extent applicable, entry of this Confirmation Order shall be deemed approval of the New Organizational Documents and the issuance of New Common Stock contemplated thereunder (in each case, including the transactions and related agreements contemplated thereby, and all actions to be taken,

undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the applicable Debtors or Reorganized Vertex, as applicable, and/or any successors, assigns, or transferees of the applicable Debtors or Reorganized Vertex, including in connection with the Restructuring Transactions, as applicable, in connection therewith), to the extent not approved by the Bankruptcy Court previously, and on the Effective Date, without any further action by the Bankruptcy Court or the directors, officers, or equity holders of any of Reorganized Vertex, Reorganized Vertex will be and is authorized to enter into the New Organizational Documents and all related documents to which Reorganized Vertex is contemplated to be a party on the Effective Date.

118.    In addition, on the Effective Date, without any further action by the Bankruptcy Court or the directors, officers or equity holders of the Reorganized Vertex will be and is authorized to:  (a) execute, deliver, File, and record any other contracts, assignments, certificates, instruments, agreements, guaranties, or other documents executed or delivered in connection with the New Organizational Documents; (b) issue the New Common Stock; (c) perform all of its obligations under the New Organizational Documents; and (d) take all such other actions as any of the responsible officers of Reorganized Vertex may determine are necessary, appropriate, or desirable in connection with the consummation of the transactions contemplated by the New Organizational Documents and for the issuance of New Common Stock.  Notwithstanding anything to the contrary in this Confirmation Order or Article IX of the Plan, after the Effective Date, any disputes arising under the New Organizational Documents will be governed by the jurisdictional provisions therein.  For the avoidance of doubt, any claimant's acceptance of the New Common Stock shall be deemed as its agreement to be bound by the New Organizational Documents without the need for execution by any party other than Reorganized Vertex.

119. **Issuance of New Common Stock.**   On or prior to the Effective Date, Reorganized Vertex shall take steps to provide that the New Common Stock is issued and/or transferred in accordance with the terms of the Plan, this Confirmation Order, the New Organizational Documents, and applicable Law (including applicable Securities Laws).  For the avoidance of doubt, pursuant to Article IV.T of the Plan, as of the Effective Date, Reorganized Vertex shall reserve a pool of up to 10% of the New Common Stock for the Management Incentive Plan, which shall be issued to management employees of the Reorganized Debtors on terms and conditions reflected in the MIP Documents (if any) and as determined by the New Board.

120. **Establishment of the GUC Trust and Approval of the GUC Trust Agreement.**  On or prior to the Effective Date, the Debtors and the GUC Trustee shall execute the GUC Trust Agreement attached to the Plan Supplement, as may be altered, amended, modified, or supplemented in accordance with its terms prior to the Effective Date.  The GUC Trust Agreement is approved and the Debtors, the Reorganized Debtors, and the GUC Trustee, as applicable, are authorized and directed to execute and perform under the GUC Trust Agreement without further order of the Bankruptcy Court.  The GUC Trustee is vested with all of the power and authority set forth in the Plan and the GUC Trust Agreement and otherwise as is necessary and proper to carry out the provisions of the Plan or the GUC Trust Agreement, as applicable.

121. **Provisions Regarding Liberty Mutual Insurance Company and Lexon Insurance Company**.  Notwithstanding any other provisions of the Plan, this Confirmation Order, the Plan Supplement, or any other order of the Bankruptcy Court, on the Effective Date, all contractual and common law rights and obligations of Liberty Mutual Insurance Company and Lexon Insurance Company (collectively, the "Sureties," and individually, each a "Surety") related to the (i) surety bonds of any kind issued by the Sureties and maintained in the ordinary

course of business, (ii) payment and/or indemnity agreements between the Debtors and the Sureties, setting forth the Sureties' rights against the Debtors, if any, and the Debtors' obligations to pay and indemnify the Sureties from any loss, cost, or expense that the Sureties may incur, in each case, on account of the issuance of any bonds on behalf of the Debtors, (iii) the Sureties' collateral agreements, if any, governing collateral in connection with the Debtors' bonds, including, but not limited to, as applicable, control agreements, trust agreements, deposit accounts, letters of credit and proceeds therefrom and/or (iv) ordinary course premium payments to the Sureties for the Debtors' bonds (collectively, the "Bond Program," and the Debtors' obligations arising thereunder, the "Bond Obligations") shall be reaffirmed and ratified by the applicable Reorganized Debtors and continue in full force and effect according to their terms and applicable nonbankruptcy Law and are not discharged or released by the Plan.  For the avoidance of doubt, nothing in the Plan, this Confirmation Order, or the Plan Supplement, including, without limitation, any exculpation, release, injunction, or discharge provisions contained in the Plan, including, without limitation, Article VIII of the Plan, shall bar, alter, limit, impair, release, modify, or enjoin the Bond Obligations or Bond Program.  The Sureties are not Releasing Parties under the Plan and shall be deemed to have not opted in to the Third-Party Release provided for in Article VIII.D of the Plan.  Further, only to the extent that such consent is required pursuant to the terms of the applicable surety bond agreement or applicable common law, nothing in this Confirmation Order, the Plan, the Plan Supplement, shall authorize or permit the substitution of any principal under any of the surety bonds without the applicable Surety's consent.

122.    The Bond Program and all Bond Obligations related thereto shall be treated by the Reorganized Debtors and the Sureties in the ordinary course of business as if these Chapter 11

Cases had not been commenced.  Solely to the extent that any of the agreements related to the Bond Obligations are deemed to be one or more executory contracts, any such agreements are assumed by the Debtors and the Reorganized Debtors pursuant to section 365 of the Bankruptcy Code upon the Effective Date with the consent of the Sureties, as applicable.  Solely to the extent required by the terms of the applicable agreements related to the Bond Obligations, and as part of the ordinary course of business of the Bond Program,  the Debtors or the Reorganized Debtors, as applicable, will pay any unpaid premiums and loss adjustment expenses (including the reasonable and documented attorneys' costs and fees) that are due and owing to the Sureties on the Effective Date, or as soon as reasonably practicable thereafter.  Nothing in the Plan, the Plan Supplement, or these foregoing paragraphs shall alter, limit, modify, prime, subordinate, impair, affect, or expand the Sureties' rights against any non-Debtor, or any non-Debtor's rights against the Sureties, including under the Bond Program or with regard to the Bond Obligations. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Debtors and Reorganized Debtors, as applicable, reserve all rights and defenses with respect to any right, claim, interest, obligation, document, and agreement related to the Bond Program and the Bond Obligations.

123.  **Provisions Regarding the Department of Justice.**  Nothing in this Confirmation Order, the Plan, or Plan documents discharges, releases, precludes or enjoins:  (i) any police or regulatory liability to a Governmental Unit that is not a Claim; (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the Effective Date; or (iv) any liability to a Governmental Unit on the part of any Person or Entity other than the Debtors.  Nor shall anything in this Confirmation

Order, the Plan, or Plan documents (i) enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Bankruptcy Court, any liability described in the preceding sentence, or (ii) affect any setoff or recoupment rights of any Governmental Unit, or the Debtors' or Reorganized Debtors', as applicable, defenses and rights to any set off or recoupment, except as such rights may be impaired under applicable law; *provided* that (x) the Bankruptcy Court retains jurisdiction to determine whether environmental liabilities asserted by any Governmental Unit or other Entity are discharged or otherwise barred by the Plan or related Plan documents, this Confirmation Order, any other order relating to the Debtors, or the Bankruptcy Code and (y) nothing in this Confirmation Order, the Plan, or Plan Documents divests any tribunal of any jurisdiction it may have under police or regulatory laws to interpret this Order, the Plan, or Plan Documents or to adjudicate any defense asserted under this Confirmation Order, the Plan, or other Plan documents.

124.    With respect to the RVO Settlement Agreement between the United States on behalf of the United States Environmental Protection Agency and the Debtors, filed at Docket No. 540, in the event of any inconsistency between the Plan and the RVO Settlement Agreement, the terms of the RVO Settlement Agreement shall control.  In the event of any inconsistency between this Confirmation Order and the RVO Settlement Agreement, the terms of the RVO Settlement Agreement shall control.

125.    **Provisions Regarding Shell.**   Notwithstanding anything in the Plan or this Confirmation Order to the contrary, the agreements set forth on Exhibit C (the "Shell Agreements") and the agreements set forth on Exhibit D (the "Tripartite Agreements") shall be deemed rejected as of February 28, 2025, unless (a) with respect to the Shell Agreements, the Reorganized Debtors and Shell mutually agree to extend such date in writing (as extended, as

applicable, the "Shell Rejection Effective Date"), and (b) with respect to the Tripartite Agreements, the Reorganized Debtors, Shell, and Macquarie mutually agree to extend such date in writing (as extended, as applicable, the "Tripartite Rejection Effective Date"). Both the Reorganized Debtors and Shell shall continue to perform under the Shell Agreements through the Shell Rejection Effective Date. The Reorganized Debtors, Shell and Macquarie shall continue to perform under the Tripartite Agreements through the Tripartite Rejection Effective Date. Additionally, for the avoidance of doubt, after the Shell Rejection Effective Date or the Tripartite Rejection Effective Date, as applicable, neither the Reorganized Debtors, nor Macquarie, nor Shell, shall be required to take any further action with the Bankruptcy Court to terminate the Shell Agreements or the Tripartite Agreements, as appropriate under their terms. Further, notwithstanding anything in the Plan or this Confirmation Order to the contrary, but to the extent provided by the Intermediation Facility Orders, up until the Effective Date of the Plan, Shell shall continue to be entitled to superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code and, from and after the Effective Date the Reorganized Debtors will make all payments when due and in the ordinary course (other than termination payments for which Shell may file any necessary claims, as appropriate, as described herein) as may be required under the Shell Agreements (unless expressly amended pursuant to the Shell Support Agreement[4] or otherwise agreed to in writing by the Reorganized Debtors and Shell) when due in the ordinary course for nominations or mandates of volumes purchased for delivery, where such nominations or mandates occur prior to the Shell Rejection Effective Date pursuant to the Shell Agreements and the Tripartite Agreements (including, if applicable and subject to the terms thereof, any actual reasonable and documented costs incurred postpetition by

---

[4]    Shell Support Agreement shall mean Exhibit 5 to the Intermediation Facility Orders [Docket Nos. 54, 72, 329].

Shell for any accepted postpetition mandates or postpetition changes in prepetition elections under the Shell Agreements or the Tripartite Agreements by the Debtors subject to Shell's duty to mitigate any such costs in accordance with and subject to the terms and priorities set forth in the Intermediation Facility Orders).  From and after the Effective Date, and solely through the Shell Rejection Effective Date, the Reorganized Debtors are hereby authorized and directed to continue making all payments owed to Shell under the Shell Agreements and the Tripartite Agreements, in the ordinary course of business and as may be required by the Shell Agreements and/or Tripartite Agreements, on account of services provided to the Debtors or Reorganized Debtors, as applicable, prior to the Shell Rejection Effective Date and/or Tripartite Agreement Rejection Date.  This Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the rejection of the Shell Agreements.  Shell's rejection damage claims, if any, are deemed timely filed if Filed within forty-five (45) days of the Shell Rejection Effective Date.  Notwithstanding anything in the foregoing, the Debtors and/or the Reorganized Debtors, as applicable, Shell, and Macquarie, reserve their respective rights and defenses under the Shell Agreements and the Tripartite Agreements with respect to any disputes regarding the quantity or quality of any deliveries made under any of the Shell Agreements.

126.    Notwithstanding the Debtors' rejection of the Sale and Purchase Agreement by and between Equilon Enterprises LLC d/b/a Shell Oil Products US and/or Shell Chemical LP and/or Shell Oil Company and Vertex Energy Operating LLC dated May 26, 2021 (the "SPA"), the Debtors or Reorganized Debtors, as applicable, agree to continue operating the equipment that is subject to the Consent Decree and will cooperate with and provide the information to the required party, consistent with past practice, per Sections 2.03(a)(ix) and 8.11 of the SPA as

required by the Consent Decree as defined in the SPA and further described in Section 4.13(b) of the Disclosure Letter – HSE Claims.

127.     **Provisions Regarding Texas Taxing Authorities.**  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Allowed Claims of the Texas Taxing Authorities[5] with respect to ad valorem taxes (the "Texas Taxing Authority Claims") shall be paid on the later of (a) the Effective Date (or as soon as practical thereafter) or (b) when due pursuant to the Texas Tax Code (subject to any applicable extensions, grace periods, or similar rights under the Texas Tax Code).  The Texas Taxing Authority Claims shall, subject to any applicable limitation in the Bankruptcy Code, include all accrued interest properly charged under applicable non-bankruptcy Law through the date of payment, to the extent the Texas Tax Code provides for interest with respect to any portion of the Texas Taxing Authority Claims.  With respect to the Texas Taxing Authority Claims, the prepetition and postpetition tax liens of the Texas Taxing Authorities shall be expressly retained in accordance with applicable non-bankruptcy Law until the applicable Texas Taxing Authority claim is paid.  The Texas Taxing Authorities' Lien priority shall not be primed or subordinated by any exit financing approved by the Bankruptcy Court in conjunction with the Confirmation of the Plan or otherwise.  In the event that the collateral that secures the Claim of one or more of the Texas Taxing Authorities is returned to a creditor holding a Lien that is junior to that of the Texas Taxing Authorities, the Debtors or Reorganized Debtors, as applicable, shall first pay all ad valorem property taxes that are secured by such collateral, to the extent that the Debtors are liable for such ad valorem property taxes under applicable non-bankruptcy Law.  Reorganized Debtors shall pay all postpetition ad valorem tax liabilities (tax year 2025 and subsequent tax years) owing to the Texas Taxing Authorities in the ordinary course of business as such tax debt comes due.  All rights and defenses of the Debtors and Reorganized Debtors under non-bankruptcy Law and the Bankruptcy Code are reserved and preserved with respect to such Texas Taxing Authority Claims.

---

[5]     Bexar County, Camp CAD, Deer Park Independent School District, Harris County Emergency Service District #14, Jefferson County, Nueces County, Sabine Pass Independent School District, Clear Creek Independent School District, City of Houston, Clear Lake Water Authority, and Chambers County.

128.     **Provision Regarding CP Terminal, LLC.**   Notwithstanding anything in this Confirmation Order or the Plan to the contrary, on the Effective Date, the Debtors shall assume that certain Lease Agreement dated as of June 25, 1997, by and between Debtor Cedar Marine Terminals, LP, on the one hand, and CP Terminal, LLC ("CP Terminal"), on the other hand (as was assigned by TRW Trading, Inc., effective as of December 19, 2005, and as may be amended, supplemented, or modified from time to time, the "CP Terminal Lease").   On the Effective Date (or as soon as reasonably practicable thereafter), the Debtors agree to pay to CP Terminal Cure amounts of $50,000 in full and final satisfaction and discharge of all of the Debtors' prepetition obligations owed under the CP Terminal Lease.   Further, CP Terminal agrees to waive any rights to any attorneys' fees or interest that it may be entitled to under the CP Terminal Lease arising at any time prior to the Effective Date.   As of the Effective Date, the Debtors further agree to (a) comply with their obligations under section 4.2 of the CP Terminal Lease and pay the 2024 property taxes that become due in 2025 in the ordinary course and subject to the terms of the CP Terminal Lease, (b) pay Base Rent (as defined in the CP Terminal Lease) in accordance with section 2.b of Amendment No. 4 to the CP Terminal Lease, which for the avoidance of doubt shall be $30,000 a month beginning December 1, 2027 (plus any applicable escalation for rent adjustment provided under the CP Terminal Lease), and (c) make rent payments effective as of November 1, 2024 and thereafter that include the applicable rent escalation amounts provided under the CP Terminal Lease and to pay on the Effective Date (or as soon as reasonably practicable thereafter) a true up payment for any such amounts that have not been paid for the period between November 1, 2024 and the Effective Date.

129.     **Provision Regarding Penthol LLC and Penthol C.V.**   Notwithstanding anything to the contrary contained in the Plan, the Plan Supplement, or this Confirmation Order,

any defenses (including defensive claims asserted for purposes of any defensive right to setoff that does not seek an affirmative recovery from the Debtors) held by Penthol LLC or Penthol C.V. in connection with (a) the cases styled (i) *Penthol LLC v. Vertex Energy Operating LLC*, Civil Action No. 4:21-cv-416, in the United States District Court for the Southern District of Texas, (ii) *Vertex Energy Operating, LLC v. Penthol LLC*, Cause No. 2020-65269, in the 61st District Court of Harris County, Texas, or (iii) *Penthol LLC v. Vertex Energy Operating, LLC*, Case No. 24-20329 (5th Cir. 2024) or (b) Claims or Causes of Action held by the Debtors or Reorganized Debtors, and/or assigned to the GUC Trust, the GUC Trustee, and/or the Reorganized Debtors, including those relating to that certain Sales Representative and Marketing Agreement between Penthol LLC and Vertex Operating LLC, are fully preserved and shall not be prejudiced by the Plan, the Plan Supplement, or this Confirmation Order.

130.   **Provision Regarding Atmos Energy Louisiana Industrial Gas, LLC.**  Atmos Energy Louisiana Industrial Gas, LLC ("Atmos") supplies natural gas to Debtor Vertex Energy Operating, LLC under, *inter alia*, a *Base Contract for Interruptible Sale and Purchase of Natural Gas*.  Atmos holds a prepetition claim in the amount of $155,469.33, represented by Proof of Claim No. 33 (the "Atmos Claim").  Atmos also holds a prepetition security deposit in the amount of $200,000 (the "Atmos Security Deposit").  Pursuant to the Fourth Amended Plan Supplement, the Debtors will assume the Atmos agreements listed on the Assumed Executory Contract and Unexpired Leases List (the "Atmos Agreements").  Subject to payment in full of the Atomos Claim as a cure payment in accordance with the terms of the Plan, Atmos shall be deemed to have withdrawn their *Limited Objection of Atmos Energy Louisiana Industrial Gas, LLC, to the First Amended Joint Chapter 11 Plan of Vertex Energy, Inc. and its Debtor Affiliates* [Docket No. 543].  Further, notwithstanding anything in the Plan to the contrary, after the

Effective Date, Atmos's rights pursuant to the Atmos Agreements and applicable Law shall remain in full force and effect with respect to the Atmos Security Deposit, including any right to setoff and recoupment; *provided* that the Debtors' and Reorganized Debtors', as applicable, rights and defenses are reserved and preserved with respect thereto.

131. **Provision Regarding the Committee Settlement.** The Plan incorporates and implements the Committee Settlement, a compromise and settlement of numerous issues and disputes between and among the Debtors, the DIP Lenders, the Required Consenting Term Loan Lenders, and the Committee, and is designed to achieve a reasonable and effective resolution of the Chapter 11 Cases. Except as otherwise expressly set forth herein or in the Plan, the Committee Settlement constitutes a settlement of all potential issues and Claims between and among the Debtors, the Committee, the DIP Lenders, and the Required Consenting Term Loan Lenders.

132. **Provisions Regarding the Matheson Settlement**. The Plan incorporates and implements the Matheson Settlement, a compromise and settlement of numerous issues and disputes between and among the Debtors and Matheson. On the Effective Date, Matheson and the Debtors shall enter into the Matheson Mutual Release Agreement, which shall provide for a full and final release of any and all Claims and Causes of Action between Matheson, the Debtors, and their Related Parties. For the avoidance of doubt, no Claim or Cause of Action against Matheson related to or arising under the Matheson Agreement shall be (i) a Retained Cause of Action, (ii) included in any Schedule of Retained Causes of Action, or (iii) be included in the GUC Causes of Action.

133. Notwithstanding the foregoing, the Matheson Mutual Release Agreement and the Debtor Release shall not release Matheson from its obligation to dismantle and remove the

Matheson Hydrogen Facility in accordance with the Plan and the Matheson Rejection Order. Further, to the extent the Matheson Saraland 1 Agreements are (a) assumed by the Debtors or the Reorganized Debtors, as applicable, Matheson and the Reorganized Debtors shall not be released from their respective post-Effective Date obligations under the Matheson Saraland 1 Agreements (including with respect to the payment of any Cure), or (b) rejected by the Debtors or the Reorganized Debtors, as applicable, Matheson shall be entitled to assert a Claim arising from the rejection of the Matheson Saraland 1 Agreements in accordance with Article V.B of the Plan.

134.    In addition to the foregoing, Matheson shall dismantle and remove the Matheson Hydrogen Facility from the Debtors' premises at its own cost in accordance with the Matheson Rejection Order.  For the avoidance of doubt, the costs and expenses arising from dismantling and removing the Matheson Hydrogen Facility shall be solely the responsibility of Matheson, and, notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Debtors shall not release any claims against Matheson relating to such dismantling and removal.

135.    **Provision Regarding the RVO Settlement Agreement**.  The Debtors' entry into the RVO Settlement Agreement is hereby approved pursuant to Bankruptcy Rule 9019.  The Debtors are authorized to take all necessary and appropriate action to implement the RVO Settlement Agreement following the approval of the EPA's entry into the RVO Settlement Agreement and the Effective Date of the Plan.

136.    **Compromise of Controversies.**  In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved under the Plan and the entry of this Confirmation Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019.

137.    **Indemnification Provisions.**  Subject to the RSA, all Indemnification Provisions in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for the benefit of current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of, or acting on behalf of, the Debtors, as applicable, shall (a) be Reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of, or acting on behalf of, the Debtors than the Indemnification Provisions in place prior to the Effective Date, and (b) shall be assumed by the Reorganized Debtors.

138.    To the extent that the D&O Liability Insurance Policies are considered to be Executory Contracts, notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Reorganized Debtors shall be deemed to have assumed all unexpired D&O Liability Insurance Policies with respect to the Debtors' directors, managers, officers, and employees serving on or before the Petition Date pursuant to section 365(a) of the Bankruptcy Code, entry of this Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, this Confirmation Order shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligations will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be Filed.

139. **Authorization to Consummate.**  The Debtors are authorized to consummate the Plan after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX of the Plan.

140. **Professional Compensation.**  All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account, which the Reorganized Debtors will establish in trust for the Professionals and fund such account with Cash equal to the Professional Fee Amount on the Effective Date.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors.

141. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed. When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court.

142. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the

Reorganized Debtors, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

143.     **Certain Securities Law Matters**.   Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of New Common Stock in reliance on the exemption set forth in section 1145 of the Bankruptcy Code shall be exempt from, among other things, the registration and prospectus delivery requirements of section 5 of the Securities Act and any other applicable federal, state, local, or other Law requiring registration prior to the offering, issuance, distribution, or sale of securities.   Such shares of New Common Stock issued in reliance on the exemption set forth in section 1145 of the Bankruptcy Code (a) will not be "restricted securities" as defined in rule 144(a)(3) under the Securities Act, and (b) will be freely tradable and transferable in the United States by each recipient thereof that (i) is an entity that is not an "underwriter" as defined in section 1145(b)(1) of the Bankruptcy Code, (ii) is not an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, (iii) has not been such an "affiliate" within 90 days of the time of the transfer, and (iv) has not acquired such securities from an "affiliate" within one year of the time of transfer.   Notwithstanding the foregoing, the shares of New Common Stock issued in reliance on the exemption set forth in section 1145 of the Bankruptcy Code will remain subject to compliance with applicable securities laws and any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such securities and subject to any restrictions in the New Organizational Documents.

144.     To the extent the exemption provided under section 1145 of the Bankruptcy Code is unavailable for the issuance of any shares of New Common Stock under the Plan, including the New Common Stock underlying the Management Incentive Plan, such shares will instead be

issued in reliance on section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration. Any such shares of New Common Stock will be considered "restricted securities" as defined by Rule 144 of the Securities Act and may not be resold under the Securities Act and applicable state or local securities Laws absent an effective registration statement, or pursuant to an applicable exemption from registration, under the Securities Act and pursuant to applicable securities Laws.

145.    Should the Reorganized Debtors elect, on or after the Effective Date, to reflect any ownership of the securities issued pursuant to the Plan through the facilities of the DTC, the Reorganized Debtors need not provide to DTC any further evidence other than the Plan or this Confirmation Order with respect to the treatment of the securities to be issued under the Plan under applicable securities laws. Notwithstanding anything to the contrary in the Plan, no Entity, including, for the avoidance of doubt, DTC, shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the securities to be issued under the Plan are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

146.    **Cooperation by the DTC.** The DTC, and any participants and intermediaries, shall fully cooperate and facilitate distributions, as applicable, pursuant to the Plan. The DTC and any transfer agent shall be required to accept and conclusively rely upon the Plan or Confirmation Order in lieu of a legal opinion regarding whether the New Common Stock (including the New Common Stock issued in connection with the Management Incentive Plan) are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

147. **Section 1146(a) Exemption.** To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (a) the issuance, Reinstatement, distribution, transfer, or exchange of any debt, Equity Security, or other interest in the Debtors or the Reorganized Debtors, as applicable; (b) the Restructuring Transactions; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; (e) the grant of collateral as security pursuant to the Plan, or (f) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing

instruments or other documents without the payment of any such tax or governmental assessment.

148. **Documents, Mortgages, and Instruments.** This Confirmation Order is, and shall be, binding upon and shall govern the acts of all Persons or Entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and state officials, and corresponding officials in all applicable jurisdictions, both foreign and domestic, and all other Persons and Entities who may be required, by operation of Law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, local, and foreign government agency is hereby directed to accept any and all documents and instruments necessary, useful, advisable, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan, including the Restructuring Transactions, and this Confirmation Order and, to the extent such Persons or Entities are not identified by the Debtors or Reorganized Debtors, as applicable, after reasonable due inquiry, the Debtors or Reorganized Debtors, as applicable, shall be granted power of attorney to sign on behalf of such Person or Entity.

149. **Continued Effect of Stays and Injunction.** Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court that is in existence upon entry of this Confirmation Order shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

150.     **Nonseverability of Plan Provisions Upon Confirmation.**    Each term and provision of the Plan is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' or Reorganized Debtors' consent, as applicable; *provided* that any such deletion or modification must be subject to and consistent with the RSA; and (c) nonseverable and mutually dependent.

151.     **Post-Confirmation Modifications.**    In accordance with Article X.A of the Plan, without need for further order or authorization of the Bankruptcy Court, the Debtors or the Reorganized Debtors, as applicable, are authorized and empowered to make any and all modifications to any and all documents that are necessary or desirable to effectuate the Plan and the Restructuring Transactions contemplated therein, including the Recapitalization Transaction, in each case that are consistent with the Plan, subject to any applicable consents or consultation rights set forth therein.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the RSA and the Plan, the Debtors expressly reserve their respective rights to revoke or withdraw, or, to alter, amend, or modify the Plan with respect to such Debtor, one or more times after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X.A of the Plan.  For the avoidance of doubt, notwithstanding any other provision of the Plan, the Debtors shall consult the Committee and the Required Consenting Term Loan Lenders on any modification of the Plan or Plan Supplement that materially affects the treatment of

General Unsecured Claims and/or 2027 Convertible Notes Claims or any other rights of Holders of General Unsecured Claims and/or Holders of 2027 Convertible Notes Claims

152. **Applicable Nonbankruptcy Law.** The provisions of this Confirmation Order, the Plan and related documents, and any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable federal, state, or foreign Law.

153. **Waiver of Filings.** Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to File any list, schedule, or statement with the Bankruptcy Court or the U.S. Trustee is permanently waived as to any such list, schedule, or statement not Filed as of the Confirmation Date.

154. **Governmental Approvals Not Required.** This Confirmation Order shall constitute all approvals and consents required, if any, by the Laws, rules, or regulations of any state, federal, or other governmental authority, with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement, including the documents contained in the Plan Supplement, the implementation and consummation of the Restructuring Transactions, and any other documents that are necessary or desirable to implement or consummate the Restructuring Transactions.

155. **Reporting.** After entry of this Confirmation Order, the Debtors or Reorganized Debtors, as applicable, shall have no obligation to File with the Bankruptcy Court, serve on any parties, or otherwise provide any party with any other report that the Debtors or Reorganized Debtors, as applicable, were obligated to provide under the Bankruptcy Code or an order of the Bankruptcy Court, including obligations to provide any reports to any parties otherwise required

under the "first" and "second" day orders entered in these Chapter 11 Cases; *provided* that the Debtors, Reorganized Debtors, or the GUC Trustee, as applicable, will comply with the U.S. Trustee's quarterly reporting requirements.   From the Confirmation Date through the Effective Date, the Debtors will File such reports as are required under the Bankruptcy Local Rules.

156.   **Notices of Confirmation and Effective Date.**   The Reorganized Debtors shall cause service of the notice of entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit B** (as may be revised to the applicable Debtors, the "Notice of Effective Date"), to be provided in accordance with Bankruptcy Rules 2002 and 3020(c) on all Holders of Claims and Interests within ten (10) Business Days after the Effective Date or as soon as reasonably practicable thereafter. Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.   The Confirmation Hearing Notice, this Confirmation Order, and the Notice of Effective Date are adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

157.   **Failure of Consummation.**   If Consummation does not occur for a Debtor, the Plan and the findings in this Confirmation Order shall be null and void in all respects as to such Debtor and nothing contained in the Plan or the Disclosure Statement as to such Debtor shall: (a) constitute a waiver or release of any claims (including Claims) by the Debtors, any

Holders of Claims or Interests, or any other Entity; (b) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity.

158.    **Substantial Consummation.**  On the Effective Date, the Plan shall be deemed to be substantially consummated under section 1101(2) of the Bankruptcy Code.

159.    **Waiver of 14-Day Stay**.  Notwithstanding Bankruptcy Rule 3020(e) or 6004, this Confirmation Order is effective immediately and not subject to any stay.

160.    **References to and Omissions of Plan Provisions.**  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

161.    **Headings.**  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

162.    **Effect of Conflict.**  This Confirmation Order supersedes any Bankruptcy Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.  If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

163.    **Final Order.**  This Confirmation Order is a Final Order and the period in which an appeal must be Filed shall commence upon the entry hereof.

164.     **Dissolution of Committee.**  On the Effective Date, the Committee and any other statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases; except with respect to (a) any continuing confidentiality obligations, (b) prosecuting requests for allowances of compensation and reimbursement of expenses incurred prior to the Effective Date, and (c) in the event that the Bankruptcy Court's entry of this Confirmation Order is appealed, participating in such appeal.  The Reorganized Debtors shall not be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committee after the Effective Date.

165.     **Retention of Jurisdiction.**  The Bankruptcy Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.  Notwithstanding anything in the Plan or this Confirmation Order to the contrary, this Bankruptcy Court retains jurisdiction to the maximum extent otherwise allowed by Law under the applicable circumstances.


Signed:_____, 2024

_____
Christopher M. Lopez
United States Bankruptcy Judge

78